MICHAEL W. SILLYMAN #004259
SAMUEL L. BLATNICK (PRO HAC VICE PENDING)
JAKE L. SHERRARD #021594
KUTAK ROCK LLP
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253-2738
(480) 429-5000
Facsimile: (480) 429-5001
*Attorneys for Plaintiff RES-AZ ONE, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| RES-AZ ONE, LLC, a Florida limited liability company | NO.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| ANDREW J. MCADAMS, and CASSANDRA PARKER, husband and wife; DOUGLAS EPLEY and JANE DOE EPLEY, husband and wife; MARVIN JONES, Jr. and JANE DOE JONES, husband and wife; BABAK MOTAMEDI and JANE DOE MOTAMEDI, husband and wife; TUDOR CORA and JANE DOE CORA, husband and wife; ELIZABETH MCADAMS and JOHN DOE MCADAMS, husband and wife; VC DYNAMICS, INC. an Arizona Corporation; VC SOLUTIONS, LLC, an Arizona limited liability company; CAP PARTNERS, LLC, an Arizona limited liability company; CONVERSION GENIE, INC., an Arizona corporation; AJM CAPITAL, LLC, an Arizona limited liability company; MARVQUIN, LLC, an Arizona limited liability company; AJM DEVELOPMENT, LLC, an Arizona limited liability company; PREFERRED MARKET HOLDINGS LIMITED, and entity of unknown domicile; ROSECREST GLOBAL, an entity of unknown domicile; ROSECREST INVESTMENTS LIMITED, an entity of unknown domicile; SET SAIL GLOBAL LIMITED, an entity of unknown domicile; US REFILOANS, LLC, an Arizona limited liability company; ENERGY REDUCTION CENTER, INC., an Arizona corporation; RANDOM SOFTWARE GROUP, LLC, a Delaware limited liability company; and RSG HOSTING, INC., an Arizona corporation, | **JURY TRIAL DEMANDED**<br><br>**SEEKING EMERGENCY INJUNCTIVE RELIEF** |
| Defendants. | |

Plaintiff Res-AZ ONE, LLC (**RES-AZ**) for its claims against defendants alleges upon information and belief, unless specifically averred otherwise, as follows:

## NATURE OF THE CASE

This case arises from a massive conspiracy by and among the defendants to defraud **RES-AZ** and numerous other creditors of Andrew J. McAdams (**MCADAMS**). Such conspiracy was planned and accomplished through the ongoing use of unlawful activity, including, *inter alia*, wire fraud, mail fraud, money laundering, witness tampering, and other indictable offenses. As a result of the ongoing scheme, **RES-AZ** has been deprived from the collection of millions of dollars to which it is entitled by judicial judgment, and it has been forced to incur substantial fees and costs related to its collection efforts.

In or about March 2007, Columbian Bank and Trust Company (**Columbian**) issued a loan to 8th & Camelback, LLC in the principal amount of $6,300,000. To secure this loan, **MCADAMS** executed an Unconditional Guaranty in favor of **Columbian**, through which he personally secured the indebtedness of the loan to 8th & Camelback, LLC. The loan was approved based on false financial information submitted by **MCADAMS**, which materially misrepresented **MCADAMS'** financial history and wealth.

In or about April 2010, the loan to 8th & Camelback, LLC went into default. **RES-AZ**, the successor-in-interest to **Columbian**, attempted to satisfy the loan by enforcing the Unconditional Guaranty.

On July 14, 2011, **RES-AZ** obtained a judgment against **MCADAMS** in Maricopa County Superior Court, Case No. CV2010-027542 (**JUDGMENT**). **RES-AZ** attempted to enforce the **JUDGMENT**, and on or about September 3, 2013, **MCADAMS** responded by filing for bankruptcy in the Bankruptcy Court for the District of Arizona, Case No. 2:13-bk-15294 (**BANKRUPTCY**). On or around March 6, 2014, **RES-AZ** filed an adversary complaint against **MCADAMS**, which sought to prevent **MCADAMS** from obtaining a discharge from his debts, including, but not limited to, the **JUDGMENT**. **MCADAMS**

waived his discharge and entered into a settlement with the duly appointed Chapter 7 Bankruptcy Trustee, Dina Anderson (**CHAPTER 7 TRUSTEE**) to resolve the **BANKRUPTCY**.

Unbeknownst to **RES-AZ**, before and continuing during the **BANKRUPTCY**, **MCADAMS** and his individual defendant co-conspirators devised and implemented an intentional, orchestrated scheme to transfer, conceal, and otherwise hide **MCADAMS'** assets for the purpose of ensuring that such assets would not be available to his creditors as part of his **BANKRUPTCY** or to **RES-AZ** individually to satisfy the undisputed **JUDGMENT**. Instead, **MCADAMS**, along with his defendant co-conspirators, purposefully hid his assets – and sought to acquire new assets, including a private jet and yacht – during his **BANKRUPTCY**, all to maintain his lavish personal lifestyle and for the enjoyment of these individuals. Such scheme involved the creation of shell corporations and the use of otherwise legitimate businesses for purposes of diverting funds that otherwise would be available for collection. **MCADAMS** and his co-conspirators undertook their scheme, which has spanned approximately three years and remains ongoing, through a series of orchestrated illegal acts.

This action is brought to recover those assets held by **MCADAMS** and the other defendants on **MCADAMS'** behalf that are necessary to satisfy the **JUDGMENT** – assets which defendants have knowingly concealed and hidden. This concealment occurred through ongoing and concerted illegal acts, including, *inter alia*, mail fraud, wire fraud, witness tampering, financial institution fraud, money laundering, obstruction of justice, and witness retaliation. As a result of such unlawful acts, **RES-AZ** has not recovered any amounts owed pursuant to the **JUDGMENT**, and it has incurred other damages as a direct and proximate result of the allegations herein.

## THE PARTIES

1.     **RES-AZ** is a Florida limited liability company with its principal place of business in Florida.

4828-0674-1812.3

2. **MCADAMS** is an individual and at all times relevant herein a resident of Maricopa County, Arizona.

3. Upon information and belief, defendant **CASSANDRA PARKER MCADAMS (PARKER)** is an individual and at all times relevant herein a resident of Maricopa County, Arizona.

4. **PARKER** and **MCADAMS** are (or were) husband and wife at all times relevant and all of **MCADAMS'** and **PARKER's** actions alleged herein were done for the benefit of the marital community.

5. Upon information and belief, defendants **DOUGLAS EPLEY (EPLEY)** and **JANE DOE EPLEY** are husband and wife and residents of Maricopa County, Arizona at all times relevant herein.

6. All of **EPLEY's** actions alleged herein were done for the benefit of the marital community.

7. Upon information and belief, defendants **MARVIN JONES, JR. (JONES)** and **JANE DOE JONES** are husband and wife and residents of Maricopa County, Arizona at all times relevant herein.

8. All of **JONES'** actions alleged herein were done for the benefit of the marital community.

9. Upon information and belief **JONES** is (or was) an attorney licensed to practice law in the State of California. Information obtained by **RES-AZ** during the **BANKRUPTCY** indicates that **JONES** regularly engaged in violations of relevant ethical rules governing the practice of law, including, but not limited to: (i) misappropriation of the another attorney's name and bar number; (*See* transcript of Rule 2004 Examination of Jerry Ownby attached here to as **Exhibit 10**, pgs. 107-113 and 161-163) and (ii) failure to obtain the informed, voluntary, and consensual waivers of his clients related to investments with **MCADAMS** and others, as required by the relevant ethical rules promulgated by the Supreme Court of Arizona as well as the Supreme Court of California.

4

10. Upon information and belief, defendants **BABAK MOTAMEDI (MOTAMEDI)** and **JANE DOE MOTAMEDI** are husband and wife and residents of Maricopa County, Arizona at all times relevant herein.

11. All of **MOTAMEDI'S** actions alleged herein were done for the benefit of the marital community.

12. Upon information and belief, **MOTAMEDI** has collaborated with **MCADAMS** on ventures dating back to at least 2008. *See* records maintained by the Arizona Corporation Commission relevant to Walkabout Chandler, LLC attached hereto as **Exhibit 42.**

13. Upon information and belief, defendants **TUDOR CORA (CORA)** and **JANE DOE CORA** are husband and wife and residents of Maricopa County, Arizona at all times relevant herein.

14. All of **CORA's** actions alleged herein were done for the benefit of the marital community.

15. Upon information and belief, defendants **ELIZABETH MCADAMS (ELIZABETH)** and **JOHN DOE MCADAMS** are husband and wife and residents of the State of Colorado at all times relevant herein.

16. All of **ELIZABETH's** actions alleged herein were done for the benefit of the marital community.

17. Upon information and belief, **ELIZABETH** is the mother of **MCADAMS**.

18. **VC DYNAMICS, INC.** is, or was, an Arizona corporation, doing business at various times as: **US REFILOANS, LLC**; **VERSACHANNEL**; **CAP PARTNERS, LLC**; **PARADIGM EQUITY PARTNERS**; **CONVERSION GENIE, INC.**; **VC SOLUTIONS, LLC**, **RANDOM SOFTWARE GROUP, LLC** and **RSG HOSTING, INC.**, with its principal place of business in Maricopa County, Arizona. *See* records maintained by the Arizona Corporation Commission relevant to VC Dynamics, Inc. attached hereto as **Exhibit 19**.

4828-0674-1812.3

19. **VC SOLUTIONS, LLC**, is, or was, an Arizona limited liability company, doing business at various times as: **US REFILOANS, LLC**; **VERSACHANNEL**; **CAP PARTNERS, LLC**; **PARADIGM EQUITY PARTNERS**; **VC DYNAMICS, INC.**; and **CONVERSION GENIE, INC.**, with its principal place of business in Maricopa County, Arizona.

20. **CONVERSION GENIE, INC.** is, or was, an Arizona corporation, doing business at various times as **US REFILOANS, LLC**; **VERSACHANNEL**; **CAP PARTNERS, LLC**; **PARADIGM EQUITY PARTNERS**; **VC DYNAMICS, INC.**; and **VC SOLUTIONS, LLC**, with its principal place of business in Maricopa County, Arizona.

21. **AJM CAPITAL, LLC**, is, or was, an Arizona limited liability company, with its principal place of business in Maricopa County, Arizona.

22. **AJM DEVELOPMENT, LLC**, is, or was, an Arizona limited liability company, with its principal place of business in Maricopa County, Arizona.

23. **MARVQUIN, LLC**, is, or was, an Arizona limited liability company, with its principal place of business in Maricopa County, Arizona

24. Upon information and belief, **PREFERRED MARKET HOLDINGS LIMITED** is a legal entity of unknown domicile, believed to have been created in Hong Kong and/or the Seychelles Islands and doing business within the United States including, but not limited to, the State of Arizona and the State of Colorado.

25. Upon information and belief, **ROSECREST GLOBAL**, is a legal entity of unknown domicile, believed to have been created in Hong Kong and/or the Seychelles Islands and doing business within the United States including, but not limited to, the State of Arizona.

26. Upon information and belief, **ROSECREST INVESTMENTS LIMITED**, is a legal entity of unknown domicile, believed to have been created in Hong Kong and/or the Seychelles Islands and doing business within the United States including, but not limited to, the State of Arizona.

27. Upon information and belief, **SET SAIL GLOBAL LIMITED**, or **SEYSETSAIL GLOBAL LIMITED**, (hereafter, **SET SAIL GLOBAL LIMITED**) is a

6

legal entity of unknown domicile, believed to have been created in Hong Kong and/or the Seychelles Islands and doing business within the United States including, but not limited to, the State of Arizona.

28. **CAP PARTNERS, LLC**, is, or was, an Arizona limited liability company, doing business at various times as: **US REFILOANS, LLC**; **VERSACHANNEL**; **VC SOLUTIONS, LLC**; **PARADIGM EQUITY PARTNERS**; **VC DYNAMICS, INC.**; and **CONVERSION GENIE, INC.** with its principal place of business in Maricopa County, Arizona.

29. **US REFILOANS, LLC**, is, or was, an Arizona limited liability company, doing business at various times as: **VC SOLUTIONS, LLC**; **VERSACHANNEL; CAP PARTNERS, LLC**; **PARADIGM EQUITY PARTNERS; VC DYNAMICS, INC.**; and **CONVERSION GENIE, INC.**, with its principal place of business in Maricopa County, Arizona.

30. **ENERGY REDUCTION CENTER, INC.**, is, or was, an Arizona corporation with its principal place of business in Maricopa County, Arizona.

31. **RANDOM SOFTWARE GROUP, LLC**, is, or was, a Delaware limited liability company, with its principal place of business in Maricopa County, Arizona.

32. **RSG HOSTING, INC.**, is, or was, an Arizona corporation with its principal place of business in Maricopa County, Arizona.

## JURISDICTION AND VENUE

33. The acts that give rise to the claims contained in this Complaint primarily occurred in or originated from Maricopa County, Arizona.

34. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this case presents a federal question by alleging violations of, and conspiracy to violate, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

35. This Court also has supplemental jurisdiction over the state-law claims pursuant to 18 U.S.C. § 1367, as the state-law claims asserted herein form part of the same

7

case or controversy, and the fraudulent and tortious acts alleged herein arise from a common nucleus of operative facts.

36.     This Court has personal jurisdiction over each of the defendants, because each of the defendants either is a resident of Arizona, has committed intentional tortious acts within and directed towards Arizona, and/or has contracted with residents of Arizona with contracts calling for performance within Arizona. In addition, the subject fraud was directed by **MCADAMS** and his co-conspirator defendants from his home location in Arizona using juridical entities domiciled in Arizona. Defendants accordingly have sufficient contacts with the State of Arizona so as not to offend traditional due process notions of fair play and substantial justice.

37.     Venue is proper in this District pursuant to:   (a) 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District; and (b) 28 U.S.C. § 1391(b)(1) and/or (3), because one or more defendants are found in this District and there is no other District in which the action may otherwise be brought.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### I.     MCADAMS' PROCUREMENT OF THE 8TH & CAMELBACK LOAN

38.     Upon information and belief, in or around the end of 2006 or the beginning of 2007, **MCADAMS**, sought to obtain a loan from **RES-AZ's** predecessor-in-interest, **Columbian**, to acquire and construct improvements on certain real property (**8th & CAMELBACK LOAN**). Upon information and belief, **Columbian** required **MCADAMS** to submit personal financial information for the **8th & CAMELBACK LOAN**, because the repayment of such loan would be supported by a personal guaranty provided by **MCADAMS** in favor of **Columbian**.

39.     While **MCADAMS** submitted various financial information to **Columbian** as part of this process, information discovered by **RES-AZ** in 2013 through discovery in the **BANKRUPTCY** demonstrates that much of this information is false and/or misleading and that **MCADAMS** knew such information was false and/or misleading when he submitted it to **Columbian**.

8

40.     As part of the efforts to obtain the **8th & CAMELBACK LOAN**, **MCADAMS** submitted certain financial information to **Columbian** including, but not limited to, personal State and Federal Income Tax Returns for 2003 **(2003 RETURNS)** and Federal Income Tax Returns for 2004 **(2004 RETURNS)**.  A true and accurate copy of the **2003 RETURNS** as provided by **MCADAMS** is attached as **Exhibit 1** and a true and accurate copy of the **2004 RETURNS** as provided by **MCADAMS** is attached as **Exhibit 2.**   Documents attached as exhibits to this complaint are incorporated herein.

41.     The **2003 RETURNS** submitted by **MCADAMS** indicated he was involved in three (3) entities, including Highline Partners, LLC, LAT Holdings, LLC, and Mountain Star Development, Inc. *See* **Exhibit 1**.

42.     However, information discovered by **RES-AZ** in 2013 through discovery in the **BANKRUPTCY** demonstrates that **MCADAMS** had no involvement in or ownership of LAT Holdings, LLC in 2003.  *See* Affidavit of Custodian of Records of LAT Holdings, LLC, attached as **Exhibit 3**.

43.     The **2004 RETURNS** submitted by **MCADAMS** indicated that he was involved in both LAT Holdings, LLC and in Mountain Star Development, Inc.  *See* **Exhibit 2**.

44.     However, **MCADAMS** would later admit in the **BANKRUPTCY** that the business affairs of Mountain Star Development, Inc. ended in 2002, and that he had no involvement in Mountain Star Development, Inc. in 2003 or 2004.  *See* response provided by **MCADAMS** to Rule 2004 Order attached as **Exhibit 4**.   **MCADAMS** likewise had no involvement in or ownership of LAT Holdings, LLC in 2004.  *See* **Exhibit 3**.

45.     As part of **MCADAMS'** efforts to obtain the **8th & CAMELBACK LOAN** from **Columbian**, he submitted a "Statement of Financial Condition," dated August 1, 2005 ("**2005 FINANCIAL STATEMENT**").  A true and accurate copy of the **2005 FINANCIAL STATEMENT** as submitted by **MCADAMS** is attached as **Exhibit 5**.

46.     As part of the **2005 FINANCIAL STATEMENT**, **MCADAMS** represented, among other things, that he possessed the following assets and investments:

9

| | |
|---|---|
| Personal Property | $980,000 |
| Vehicles | $442,000 |
| Art (Picasso) | $150,000 |
| Search Toppers, LLC | $900,000 |
| LAT Holdings, LLC | $4,270,000 |
| Mountain Star Development, Inc. | $650,000 |

47. **MCADAMS** intentionally misrepresented his holdings in assets and investments as described in the **2005 FINANCIAL STATEMENT** in at least the following ways:

a. The Picasso Print **MCADAMS** owned was worth only $7,500.

b. **MCADAMS'** interest in Search Toppers, LLC (through the legal entity, Searchtoppers.com, LLC) at the time of the **2005 FINANCIAL STATEMENT**, had a value of approximately $16,000. *See* agreement between **MCADAMS** and Searchtoppers.com, LLC attached as **Exhibit 6**.[1]

c. **MCADAMS** held no interest in LAT Holdings, LLC. *See* **Exhibit 3**.

d. Mountain Star Development, Inc. was defunct in 2005; **MCADAMS** grossly exaggerated the value of his interest in that company in his **2005 FINANCIAL STATEMENT**. *See* **Exhibits 4 and 5**.

48. As part of **MCADAMS'** efforts to obtain the **8th & CAMELBACK LOAN**, he submitted personal Federal Income Tax Returns for 2005 ("**2005 RETURNS**") to **Columbian**. A true and accurate copy of the **2005 RETURNS**, as submitted by **MCADAMS**, is attached as **Exhibit 7**.

49. The **2005 RETURNS** submitted by **MCADAMS** indicated that he was involved in two (2) entities: LAT Holdings, LLC and Mountain Star Development, Inc. *See* **Exhibit 7**.

---

[1] Upon information and belief, **JONES** possessed an ownership interest in Searchtoppers.com, LLC.

4828-0674-1812.3

50. At the time **MCADAMS** submitted his **2005 RETURNS** to **Columbian**, **MCADAMS** had no involvement in LAT Holdings, LLC, and he held no interest in Mountain Star Development, Inc. *See* **Exhibits 3 & 4**.

51. As part of **MCADAMS'** efforts to obtain the **8th & CAMELBACK LOAN** from **Columbian**, he submitted a "Personal Financial Statement," dated January 5, 2007 (**"JANUARY 2007 FINANCIAL STATEMENT"**) and a "Personal Financial Statement," dated February 22, 2007 (**"FEBRUARY 2007 FINANCIAL STATEMENT"**). A true and accurate copy of the **JANUARY 2007 FINANCIAL STATEMENT**, as submitted by **MCADAMS**, is attached hereto as **Exhibit 8**. A true and accurate copy of the **FEBRUARY 2007 FINANCIAL STATEMENT**, as submitted by **MCADAMS**, is attached as **Exhibit 9**.

52. In both the **JANUARY 2007 FINANCIAL STATEMENT (Exhibit 8)** and the **FEBRUARY 2007 FINANCIAL STATEMENT (Exhibit 9)**, **MCADAMS** represented, among other things, that he possessed the following "Non-Marketable Securities":

| | |
|---|---|
| Southgate Technology, LLC, valued at: | $623,620 |
| Ownby Technology, LLC, valued at: | $300,000 |
| Southwest Mobile Tech, LLC, valued at: | $400,000 |
| Searchtoppers, LLC, valued at: | $125,000 |
| Tactics, LLC, valued at: | $600,000 |
| Mosaic Mobile, LLC, valued at: | $490,000 |

53. **MCADAMS** intentionally misrepresented the Non-Marketable Securities that he listed in his **JANUARY 2007 FINANCIAL STATEMENT** and **FEBRUARY 2007 FINANCIAL STATEMENT** in at least the following ways:

a. **MCADAMS** had no ownership in, or involvement with, Southgate Technology, LLC.

b. **MCADAMS** had no ownership interest in Ownby Technology, LLC at the time the interest was reflected in the **JANUARY 2007 FINANCIAL STATEMENT** or the **FEBRUARY 2007 FINANCIAL STATEMENT**. *See* Deposition transcript of Jerry Ownby attached as **Exhibit 20**.

4828-0674-1812.3

c.   **MCADAMS'** interest in Searchtoppers.com, LLC was worth only $16,000—the amount for which **MCADAMS** sold such interest only two (2) months after he submitted the **JANUARY 2007 FINANCIAL STATEMENT** to **Columbian**. *See* **Exhibit 6**.

d.   **MCADAMS** had no ownership in Tactics, LLC at the time the interest was reflected in the **JANUARY 2007 FINANCIAL STATEMENT** or the **FEBRUARY 2007 FINANCIAL STATEMENT**. *See* 2006 U.S. Return of Partnership Income for Tactics, LLC attached as **Exhibit 11**.

54.   On, or around March 12, 2007, **Columbian** approved the **8th & CAMELBACK LOAN**, based upon the financial information that was submitted by **MCADAMS**.

55.   As a requirement to obtain the **8th CAMELBACK LOAN, MCADAMS** was required to, and did, execute an "Unconditional Guaranty," wherein he absolutely, irrevocably, and unconditionally guaranteed and promised to pay to **Columbian** the indebtedness owed under the **8th & CAMELBACK LOAN**, in the principal amount of $6,300,000, and all interest and other amounts related thereto ("**UNCONDITIONAL GUARANTY**"). A true and accurate copy of the "**UNCONDITIONAL GUARANTY**" is attached as **Exhibit 12**.)

56.   On or about November 14, 2007, and in connection with the **8th & CAMELBACK LOAN, MCADAMS** submitted a "Statement of Financial Condition" (the "**NOVEMBER 2007 FINANCIAL STATEMENT**") in which he represented that he held the following personal property and investments in closely-held corporations:

| | |
|---|---|
| Personal Property valued at | $985,000 |
| AJM Capital, LLC valued at | $4,000,000 |
| Jorn Homes valued at | $8,277,900 |
| AJM Assets Holdings, LLC valued at | $8,280,000 |
| LAT Holdings, LLC valued at | $3,450,000 |
| Southgate Technology, LLC valued at | $623,620 |

12

| | |
|---|---|
| Ownby Technology, LLC valued at | $280,000 |
| Southwest Mobile Technology, LLC valued at | $400,000 |
| BBN, LLC valued at | $200,000 |
| Tactics, LLC valued at | $200,000 |
| Mosaic Mobile, LLC valued at | $190,000 |

A true and accurate copy of the **NOVEMBER 2007 FINANCIAL**, as submitted by **MCADAMS**, is attached as **Exhibit 13**.

57.     **MCADAMS** intentionally misrepresented his holdings in the personal property and investments that he listed in the **NOVEMBER 2007 FINANCIAL STATEMENTS** in at least the following ways:

a.     **MCADAMS'** interest in **AJM CAPITAL, LLC** was worth substantially less than $4,000,000.  A true and accurate copy of the tax returns for **AJM CAPITAL LLC** provided to **RES-AZ** are attached as **Exhibit 14**. *See also* **Exhibit 13**.

b.     **MCADAMS'** interest in Jorn Homes, LLC was worth substantially less than $8,277,900. *See* profit and loss statements for Jorn Homes, LLC attached as **Exhibit 15**.

c.     **MCADAMS** had no ownership interest in LAT Holdings, LLC at the time that interest was reflected in the **NOVEMBER 2007 FINANCIAL STATEMENTS**. *See* **Exhibit 3**.

d.     **MCADAMS** had no ownership in Southgate Technology, LLC at the time that interest was reflected in the **NOVEMBER 2007 FINANCIAL STATEMENTS**.

e.     **MCADAMS** had no ownership in Tactics, LLC at the time that interest was reflected in the **NOVEMBER 2007 FINANCIAL STATEMENTS**. *See* **Exhibit 11**.

58.     On or around August 22, 2008, the Federal Deposit Insurance Corporation (**FDIC**) was appointed Receiver for **Columbian**.

59.     On or around February 9, 2010, the **FDIC**, in its capacity as Receiver for **Columbian**, assigned and transferred the **8th & CAMELBACK LOAN** to Multibank 2009-1 RES-ADC Venture, LLC pursuant to the Allonge, Omnibus Assignment and Assignment of

13

Real Estate Deed of Trust (**FDIC ASSIGNMENT DOCUMENTS**), copies of which are attached as **Exhibit 16**.

/ / /

/ / /

/ / /

## II. THE 8TH & CAMELBACK LOAN GOES INTO DEFAULT AND RES-AZ OBTAINS JUDGMENT AGAINST MCADAMS.

60. On or around September 12, 2008, the **8th & CAMELBACK LOAN** went into default, due to **MCADAMS'** failure to make payments when due. **MCADAMS** has made no payment on the **8th & CAMELBACK LOAN** or the **UNCONDITIONAL GUARANTY** since that date.

61. On or around June 10, 2010, Multibank 2009-1 RES-ADC Venture, LLC transferred the **8th & CAMELBACK LOAN** to its wholly owned subsidiary, plaintiff **RES-AZ**, as successor-in-interest. **RES-AZ** accordingly possesses all rights under the **8th & CAMELBACK LOAN** and **UNCONDITIONAL GUARANTY**.

62. On September 21, 2010, **RES-AZ** initiated litigation in Maricopa County Superior Court for the State of Arizona (Case No. CV2010-027542) against **MCADAMS** and others to obtain judgment for the amounts owed under the **8th & CAMELBACK LOAN** and **UNCONDITIONAL GUARANTY**. On July 14, 2014, the **JUDGMENT** was entered against **MCADAMS** and others. A true and accurate copy of the **JUDGMENT** is attached as **Exhibit 17**.

63. As set forth in the **JUDGMENT**, **MCADAMS** is liable to **RES-AZ** for the outstanding principal balance in the amount of $5,673,265.35, interest in the amount of $4,506,947.75, attorneys' fees in the amount of $9,297.63, and costs in the amount of $1,860.46, with interest accruing on the **JUDGMENT** at the rate set forth in A.R.S. § 44-1201. *See* **Exhibit 17**.

64. Upon obtaining the **JUDGMENT**, **RES-AZ** promptly initiated efforts to enforce the **JUDGMENT** against **MCADAMS** and others.

14

65. Following **RES-AZ's** obtainment of the **JUDGMENT**, **MCADAMS** and his defendant co-conspirators planned, orchestrated, and implemented a plan to transfer, hide, and conceal **MCADAMS'** assets, using fraudulent transfers and repeated unlawful acts, for purposes of depriving **RES-AZ** from collecting the **JUDGMENT**, and **MCADAMS'** other creditors from collecting on their claims against **MCADAMS**, and for purposes of retaining **MCADAMS'** assets for the collective benefit and use of defendants.

## III.    MCADAMS FILES FOR BANKRUPTCY AND CONCEALS ASSETS.

66. On or around September 3, 2013, **MCADAMS** filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code in the **BANKRUPTCY**.

67. On September 23, 2013, **MCADAMS** signed and filed his initial Statement of Financial Affairs (**SOFAS**) in the **BANKRUPTCY**. A true and accurate copy of the **SOFAS** is attached as **Exhibit 18**.

68. **MCADAMS** avowed in his **SOFAS**, under penalty of perjury, that he received compensation from his alleged employer, **VC DYNAMICS, INC.**, which he has represented was owned and controlled by **EPLEY**. According to the **SOFAS**, **VC DYNAMICS, INC.** paid **MCADAMS'** rent and utilities directly, thereby preventing any funds earned by **MCADAMS** from being placed in a bank account, where such funds could be levied by **RES-AZ** or other creditors. *See* **Exhibit 18**.

69. At the outset of the **BANKRUPTCY**, at Bankruptcy Code section 341(a) First Meeting of Creditors, **MCADAMS** further represented that certain moneys he was owed from his alleged employer, **VC DYNAMICS, INC.**, would be placed into the business accounts of certain legal entities that his wife, **PARKER**, owned, operated, and controlled, including, but not limited to **CAP PARTNERS, LLC** and **US REFILOANS, LLC**.

70. Upon information and belief, **VC DYNAMICS, INC.** was formed and incorporated in Arizona in May 2012. Upon information and belief, **VC DYNAMICS, INC.** operated as an internet marketing call center that generated leads sold to mortgage companies and attorneys among other businesses. True and accurate copies of records maintained by the Arizona Corporation Commission are attached as **Exhibits 19 and 20**. **VC DYNAMICS,**

15

INC. conducted legitimate business operations at times relevant herein. However, **MCADAMS**, **EPLY**, and **MOTAMEDI** also used **VC DYNAMICS, INC.** to carry out and conceal the unlawful scheme that serves as the basis for this action.

71. **MCADAMS** controlled **VC DYNAMICS, INC.** at its formation and at all times relevant to this action. *See, e.g.,* **Exhibit 21**.

72. On August 13, 2014, during his deposition taken at the offices of Guttilla Murphy Anderson, PC located at 5415 East High Street #200, Phoenix, Arizona 85054, **EPLEY** committed perjury to conceal the true ownership and control structure of **VC DYNAMICS, INC.** **EPLEY** falsely testified, and otherwise avowed, that he incorporated, was the owner of, original member of, and the only Director of **VC DYNAMICS, INC.**, and that at all relevant times, he served as its Chief Financial Officer. **EPLEY's** perjury was undertaken to conceal and shield assets of **MCADAMS** from **RES-AZ** and **MCADAMS'** other creditors. *See* **Exhibit 55** at p.7, l. 9; p.26, ll. 21-24, p.33, l. 6-p.37, l. 25.

73. In and about the time **MCADAMS** filed the **BANKRUPTCY**, **MOTAMEDI** joined **VC DYNAMICS, INC.** as its purported Chief Financial Officer. Upon information and belief, **MOTAMEDI's** involvement with **VC DYNAMICS, INC.**, and also with other entities tied to **MCADAMS**, was to further assist **MCADAMS** in concealing assets from **RES-AZ**, the **CHAPTER 7 TRUSTEE**, and the United States Trustee (**U.S. TRUSTEE**), through ongoing unlawful means, in violation of the laws of the United States.

74. On or about October 7, 2013, the Bankruptcy Code section 341(a) First Meeting of Creditors was conducted in U.S. Trustee Meeting Room, 230 North 1st Avenue, Suite 102, Phoenix Arizona 85003. During that meeting, **MCADAMS** testified under oath that he had directed his wages from his alleged employer **VC DYNAMICS, INC.**, into accounts controlled by either his then-wife, **PARKER**, or his long time business partner, and accountant, **EPLEY**, including **CAP PARTNERS, LLC**, and **US REFILOANS, LLC**.

75. The alleged wage arrangement paid for **MCADAMS'** personal living expenses (including use of several exotic luxury automobiles, a lease on a luxury home, international travel and child support) directly by **VC DYNAMICS, INC.**

16

76. However, the wage arrangement that **MCADAMS** described under oath and penalty of perjury was false. In reality, **MCADAMS** owned and controlled the various entities he testified were owned and controlled by **EPLEY**, **PARKER**, **JONES**, **MOTAMEDI** and others. **EPLEY**, in turn, likewise provided false testimony during his deposition to corroborate **MCADAMS'** perjury.

77. **MCADAMS** also testified under oath at his Bankruptcy Code section 341(a) First Meeting of Creditors that he had the use of several high-end automobiles including, *inter alia*, a Ferrari, Rolls Royce, and Porsche, which he testified belonged to other people, including **PARKER** and **EPLEY**. In reality, **MCADAMS** owned those vehicles. **MCADAMS** simultaneously failed to disclose the whereabouts of the vehicles he had disclosed in his **2005 FINANCIAL STATEMENT**, which he represented as valued at $442,000.

78. During the Bankruptcy Code section 341(a) First Meeting of Creditors, it was revealed that **MCADAMS** had failed to disclose several items of personal property, including a luxury watch. Upon information and belief, such omissions were intentional. On October 18, 2013, **MCADAMS** revised his **SOFAS** ("**FIRST REVISED SOFAS**"). A true and accurate copy of the **FIRST REVISED SOFAS** is attached as **Exhibit 24**.

79. On June 12, 2014, **MCADAMS** was deposed in the **BANKRUPTCY** at the law of firm of Guttilla Murphy Anderson. On August 13 and 15, 2014, **EPLEY** was deposed in the **BANKRUPTCY** at the same location. When **MCADAMS** and **EPLEY** were deposed the testimony changed and suddenly the luxury automobiles owned by **MCADAMS** were owned by an entity allegedly operated and controlled by **JONES**. *See* **Exhibit 56**.

80. **MCADAMS** testified during his June 12, 2014 deposition that his personal expenses and the personal expenses of **PARKER** were paid, at the direction of **EPLEY**, without receipt or other documentation, through bank accounts of **VC DYNAMICS, INC.** and **US REFILOANS, LLC**. Such expenses included, but were not limited to, restaurants, vacations to Asia, Europe, Australia and New Zealand, legal services (including for

4828-0674-1812.3

**MCADAMS'** divorce from an ex-wife), child support payments, car insurance premiums, jewelry, watches, medical expenses, and clothing. *Id.*

81. Upon information and belief, **CAP PARTNERS, LLC** was converted to, or otherwise became, **US REFILOANS, LLC** and/or **VERSACHANNEL** and/or **VC DYNAMICS, INC.** and/or **VC SOLUTIONS, LLC** and/or **CONVERSION GENIE, INC.** at various times without any legitimate business justification and, at all relevant times, all such entities were used to hide and conceal **MCADAMS'** wealth, and to fund the extravagant lifestyle of **MCADAMS** and **PARKER**, including, *inter alia*, the acquisition of a Chanel™ $30,000 watch, a six (6) carat diamond ring, designer clothing, and designer shoes.

82. **MCADAMS** purchased the Chanel™ watch worth approximately $30,000 roughly five weeks before he filed the **BANKRUPTCY** and transferred said watch to **PARKER**. **PARKER** provided no consideration for the watch. In March 2013, **MCADAMS** purchased a Porsche Panamera for **PARKER**. **PARKER** provided no consideration for the vehicle.

83. At a continued Bankruptcy Code section 341(a) First Meeting of Creditors, which was held on November 12, 2013 in U.S. Trustee Meeting Room, 230 North 1st Avenue, Suite 102, Phoenix, Arizona 85003, a representative of the Internal Revenue Service was present and questioned **MCADAMS** on the status of his tax filings, as well as the whereabouts of certain luxury automobiles identified in information in the possession of the Internal Revenue Service.

**IV.   RES-AZ'S DISCOVERY EFFORTS IN THE BANKRUPTCY.**

84. **RES-AZ** began discovery efforts in the **BANKRUPTCY** late in 2013, and such efforts continued into 2014. **RES-AZ** sought, among other things, to examine **MCADAMS** pursuant to its rights under Rule 2004 of the Rules of Bankruptcy Procedure.

85. On or about January 8, 2014, attorney Philip R. Rupprecht, a principal with the law firm of Aiken Schenk Hawkins & Ricciardi, PC (**SCHENK**), entered his appearance in the **BANKRUPTCY,** purportedly on behalf of **PARKER**. Attorney Rupprecht then proceeded to negotiate with counsel for **RES-AZ**, the **CHAPTER 7 TRUSTEE**, and **U.S.**

1  **TRUSTEE** regarding information in the possession of **PARKER** relevant to the

2  **BANKRUPTCY**.

3       86.     Upon information and belief, **SCHENK** and Attorney Rupprecht never were

4  retained by **PARKER** and had not even communicated with **PARKER** at the time of the

5  purported representation.

6       87.     Upon information and belief, **SCHENK** was retained by **MCADAMS** for the

7  purpose of preventing **RES-AZ**, the **CHAPTER 7 TRUSTEE**, and the **U.S. TRUSTEE**

8  from obtaining information from **PARKER** regarding **MCADAMS'** financial affairs.

9       88.     On or around April 9, 2014, **SCHENK** withdrew as counsel for **PARKER**,

10  allegedly because it was unable to communicate with **PARKER** regarding, *inter alia*,

11  appearing for her Rule 2004 Examination set by the **CHAPTER 7 TRUSTEE**.

12       89.     On or around June 20, 2014, an attorney named James Kahn (**KAHN**)

13  contacted the **CHAPTER 7 TRUSTEE** and represented that he was in the process of being

14  retained to represent **PARKER**. *See* e-mail exchange between **TRUSTEE's** counsel and

15  **KAHN** attached as **Exhibit 25**.

16       90.     However, on July 9, 2014, **KAHN** contacted the **CHAPTER 7 TRUSTEE**

17  and advised that he had not been retained by **PARKER** and was having difficulty

18  communicating with **PARKER**. *See* **Exhibit 25**.

19       91.     Upon information and belief, **PARKER** was not aware that either **SCHENK**

20  or **KAHN** had been retained on her behalf and never communicated with either of the

21  attorneys. Instead, upon information and belief, **MCADAMS** and/or other defendant co-

22  conspirators, retained both **SCHENK** and **KAHN** without advising **PARKER** that they had

23  been retained on her behalf. The attorneys were retained for purposes of impeding and

24  frustrating discovery efforts.

25       92.     In and about the same time that **SCHENK** appeared and subsequently

26  withdrew as counsel of record for **PARKER,** discovery in the **BANKRUPTCY** revealed

27  additional items of luxury personal-property that **MCADAMS** owned, which were being

28  fraudulently concealed by **MCADAMS**, **EPLEY** and **PARKER**, and further demonstrated

the intentional falsity of the **SOFAS** and **FIRST REVISED SOFAS** that were signed by **MCADAMS** under penalty of perjury on September 23, 2013 and October 18, 2013, respectively. *See* **Exhibits 18 & 24**.

93.     Upon information and belief, and in response to the discovery propounded in the **BANKRUPTCY**, **MCADAMS** again amended his statement of financial affairs (by and through his **SECOND REVISED SOFAS**), to, yet again, disclose additional luxury personal property he had previously and intentionally omitted.  A true and accurate copy of the **SECOND REVISED SOFAS** is attached as **Exhibit 26**.

94.     Because, *inter alia*, **RES-AZ** anticipated calling **EPLEY** as a witness and in conjunction with a pending criminal investigation of **EPLEY**, **RES-AZ** sought to exclude **EPLEY** from the deposition of **MCADAMS**.

95.     **EPLEY**, needing to know the false testimony that **MCADAMS** provided so that he could corroborate such false information, then falsely and fraudulently represented in certain motions filed in the **BANKRUPTCY** that he was a creditor of **MCADAMS**, notwithstanding that he was not identified in any of the statements of financial affairs filed by **MCADAMS** prior to **EPLEY's** efforts to attend the Rule 2004 examination of **MCADAMS**. *See* **Exhibits 18 & 24**.

96.     Upon information and belief, the false and fraudulent information represented by **EPLEY** through his counsel in his motions was made to further the scheme to unlawfully hide assets from **RES-AZ** and the bankruptcy estate.

97.     **EPLEY** was neither a creditor nor an employer of **MCADAMS**.  **EPLEY** was an employee of **MCADAMS**, who conspired with **MCADAMS** for the purpose of concealing the substantial wealth of **MCADAMS**, which **EPLEY** and the remaining defendant co-conspirators personally enjoyed, received, and benefited from.[2]

98.     During **RES-AZ's** Rule 2004 Examination of **MCADAMS**, which began on February 19, 2014 and concluded on April 30, 2014 (at the offices of **RES-AZ's** counsel,

---

[2] For example, upon information and belief, **MCADAMS** transferred a Bentley automobile to **EPLEY**, and received no value in return.

Kutak Rock LLP, which is located at 8601 North Scottsdale Road Scottsdale, Arizona 85253), **MCADAMS** testified that he was not the owner of various legal entities including, *inter alia*: **US REFILOANS, LLC**; **VERSACHANNEL**; **CAP PARTNERS, LLC**; **PARADIGM EQUITY PARTNERS**; **VC DYNAMICS, INC.**; and **VC SOLUTIONS, LLC**. *See* **Exhibits 54 & 57**.

99.   **MCADAMS** testified at **RES-AZ's** Rule 2004 Examination that his wife, **PARKER,** owned and operated **US REFILOANS, LLC, VERSACHANNEL, CAP PARTNERS, LLC**, and **PARADIGM EQUITY PARTNERS** and that he only assisted **PARKER** in the operation of those businesses. *See* **Exhibits 54 & 57**.

100.   **MCADAMS** further testified at **RES-AZ's** Rule 2004 Examination that **EPLEY** owned and operated **VC DYNAMICS, INC.** and **VC SOLUTIONS, LLC.** *See* **Exhibit 54 & 57**.

101.   Upon information and belief, the aforementioned testimony provided by **MCADAMS** was intentionally perjured. Based on information provided by **PARKER** at her Rule 2004 Examination, and in an informal interview, **PARKER** did not own, and in some cases did not even know of, the various entities **MCADAMS** testified that **PARKER** owned and controlled.

102.   Upon information and belief, **PARKER** also was estranged from **MCADAMS** and was outside of the territorial United States with no contact with **MCADAMS** when certain activities were allegedly undertaken by legal entities **MCADAMS** claimed were owned and controlled by **PARKER**.

V.   **THE *ICONIC RESULTS* LITIGATION.**

103.   In and around April 29, 2014 — the same period that **RES-AZ** was conducting the depositions of **MCADAMS** in the **BANKRUPTCY — RES-AZ's** counsel became aware of the civil action, captioned *VC Dynamics, Inc. et al. v. Iconic Results, LLC, et al.* (CV2014-007422), which was filed in the Superior Court for Maricopa County, Arizona **(ICONIC LITIGATION)**.

104. The defendants in the **ICONIC LITIGATION** were being sued by **VC DYNAMICS, INC.** and **CONVERSION GENIE, INC.** for allegedly misappropriating certain information from **VC DYNAMICS, INC.** and/or **CONVERSION GENIE, INC.**

105. As **RES-AZ's** counsel monitored the **ICONIC LITIGATION**, it became clear that the defendants in the **ICONIC LITIGATION** possessed information relevant to the truthfulness and completeness of the representations of **MCADAMS** and **EPLEY** in the **BANKRUPTCY**.

106. On or around June 18, 2014, counsel for the **CHAPTER 7 TRUSTEE** and counsel for **RES-AZ** met with the defendants in the **ICONIC LITIGATION**. During that meeting, the defendants in the **ICONIC LITIGATION** advised that they were all former employees of **VC DYNAMICS, INC.** and/or **CONVERSION GENIE, INC.** and certain other companies that they avowed were owned and controlled by **MCADAMS.**

107. From the June 18, 2014 meeting, **RES-AZ** first learned that **MCADAMS**, not **EPLEY**, owned and controlled **VC DYNAMICS, INC.** and **CONVERSION GENIE, INC.**, and that **MCADAMS** had complete control over both companies. No meaningful decision or action was taken by or for either company without the direction and/or approval of **MCADAMS**. **RES-AZ** also discovered that **EPLEY** was an employee of **MCADAMS**.

108. From the June 18, 2014 meeting, **RES-AZ** first learned that **CORA** and **JONES** were part of **MCADAMS'** network and worked with **MCADAMS** to control **MCADAMS'** financial empire, including extensive efforts to conceal and hide his assets from **RES-AZ** and his other creditors.

109. The defendants in the **ICONIC LITIGATION** provided evidence, including archived web site information corroborating their assertion that **MCADAMS** is the true owner of **VC DYNAMICS, INC.**

110. The **ICONIC LITIGATION** defendants also personally witnessed **MCADAMS** concealing his personal property at the offices of **VC DYNAMICS INC.** in and around the time the **CHAPTER 7 TRUSTEE** sought to inspect **MCADAMS'** home for the purpose of creating an inventory of **MCADAMS'** personal property for the **BANKRUPTCY.**

22

Upon information and belief, **MCADAMS** transported such property to **VC DYNAMICS INC.** to conceal and hide such property, so it would not be included in the estate and available for liquidation and distribution.

111. The **ICONIC LITIGATION** defendants also revealed that the luxury automobiles that **MCADAMS** had testified under perjury belonged to others, in fact, belonged to **MCADAMS**. The **ICONIC LITIGATION** defendants were personally involved in **MCADAMS'** acquisition of some of the subject automobiles.

112. The **ICONIC LITIGATION** defendants revealed that **MOTAMEDI** had admitted that he was retained by **MCADAMS** for the purposes of concealing assets from **MCADAMS'** creditors.

## VI. INFORMATION OBTAINED FROM EPLEY DURING THE BANKRUPTCY.

113. Following the conclusion of **RES-AZ's** Rule 2004 Examination of **MCADAMS, RES-AZ** undertook its Rule 2004 Examination of **EPLEY** on August 11, 2014 at the offices of its counsel. *See* **Exhibit 49**.

114. As part of **RES-AZ's** Rule 2004 Examination of **EPLEY,** it requested that **EPLEY** provide certain documents and information.

115. Defendant **EPLEY** prepared **MCADAMS'** tax returns, signed all relevant tax returns as preparer, and submitted all of **MCADAMS'** relevant tax returns to **Columbian** using the mails and/or wires for purposes of obtaining the **8th & CAMELBACK LOAN**. *See* **Exhibits 1 & 2**.

116. The **2003 RETURNS** and **2004 RETURNS** referenced herein, and attached hereto, were signed by **EPLEY** under penalty of perjury in which he falsely declared that he had "examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." He further falsely stated that the "Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge." *See* **Exhibits 1 & 2**.

4828-0674-1812.3

117. On, or about, November 27, 2013, and in response to the Rule 2004 Order propounded by **RES-AZ** on, or about, October 10, 2013, **EPLEY** produced certain tax returns purportedly filed by **MCADAMS** in 2003 (the "**2003 EPLEY TAX RETURNS**"). The **2003 EPLEY TAX RETURNS** were signed by **EPLEY** as preparer, under penalty of perjury. A true and accurate copy of the **2003 EPLEY TAX RETURNS** as produced by **EPLEY** are attached as **Exhibit 27**.

118. The **2003 EPLEY TAX RETURNS** for the State of Colorado showed **MCADAMS'** federal taxable income as negative $296,807. *See* **Exhibit 27**. The **2003 RETURNS** that **MCADAMS** provided as part of the application for the **8th & CAMELBACK LOAN**, however, showed his federal taxable income as negative $18,030. *See* **Exhibit 1**. At least one set of the tax returns identified herein is false and fraudulent.

119. On, or about, November 27, 2013, and in response to the Rule 2004 Order propounded by **RES-AZ** on, or about, October 10, 2013, **EPLEY** also produced certain tax returns purportedly filed by **MCADAMS** in 2004 (the "**2004 EPLEY TAX RETURNS**"). The **2004 EPLEY TAX RETURNS** were signed by **EPLEY** as preparer, under penalty of perjury. A true and accurate copy of the **2004 EPLEY TAX RETURNS** are attached as **Exhibit 28**.

120. The **2004 EPLEY TAX RETURNS** represent **MCADAMS'** adjusted gross income as $207,678, list only one (1) dependent, and purport to have been prepared on January 4, 2008, while the **2004 RETURNS** provided by **MCADAMS** (and signed by **EPLEY** as preparer) as part of the application for the **8th & CAMELBACK LOAN** listed an adjusted gross income of $235,000, two (2) dependents, and purported to have been prepared on May 9, 2006. *See* **Exhibits 2 & 28**. At least one set of the tax returns identified herein is false and fraudulent.

121. On, or about November 27, 2013, and in response to the Rule 2004 Order propounded by **RES-AZ** on, or about, October 10, 2013, **EPLEY** also produced certain tax returns purportedly filed by **MCADAMS** in 2005 (the "**2005 EPLEY TAX RETURNS**"). The **2005 EPLEY TAX RETURNS** were signed by **EPLEY** as preparer under penalty of

4828-0674-1812.3

perjury. A true and accurate copy of the **2005 EPLEY TAX RETURNS** is attached as **Exhibit 29**.

122. The **2005 EPLEY TAX RETURNS** identify **MCADAMS'** adjusted gross income as $137,092, list only one (1) dependent, and purport to have been prepared on January 3, 2008, while the **2005 RETURNS** provided by **MCADAMS** (and signed by **EPLEY** as preparer) as part of the application for the **8th & CAMELBACK LOAN** identify an adjusted gross income of $264,286, list two (2) dependents, and purport to have been prepared on November 10, 2006. *See* **Exhibits 7 & 29**. At least one set of the tax returns identified herein is false and fraudulent.

123. On, or around March 6, 2014, **RES-AZ** instituted an adversary proceeding in the **BANKRUPTCY** captioned *RES-AZ One, LLC v. Andrew J. McAdams* (2:14-ap-00211), seeking to prevent **MCADAMS** from obtaining a discharge of his debts pursuant to §§ 523(a)(2) and 727(a) and (c) of the Bankruptcy Code. A true and accurate copy of the Adversary is attached as **Exhibit 30**.

## VII. THE CHAPTER 7 TRUSTEE INVESTIGATES MCADAMS.

124. The **CHAPTER 7 TRUSTEE** was conducting her own discovery at the same time **RES-AZ** was investigating **MCADAMS** and **EPLEY**.

125. Upon information and belief, the information developed by the **CHAPTER 7 TRUSTEE** demonstrates that **MCADAMS** currently possesses (and possessed at the time he instituted the **BANKRUPTCY**) several luxury items, which he intentionally failed to disclose in his **SOFAS**, including, but not limited to, a private airplane equipped with expensive surveillance equipment, a custom yacht, and the automobiles, watches and jewelry discussed above. *See* information from **TRUSTEE** regarding sale of airplane attached as **Exhibit 31**; *see also* information regarding **MCADAMS'** negotiations for a luxury yacht and the e-mail from D. Simard dated March 12, 2016 attached as **Exhibit 32**.

126. Upon information and belief, the information developed by the **CHAPTER 7 TRUSTEE** demonstrates that **MCADAMS** currently possesses and possessed (at the time he instituted the **BANKRUPTCY**) ownership interests in the following entities, among others,

25

which **MCADAMS** and his defendant co-conspirators failed to disclose and which were created and utilized to hide and conceal **MCADAMS'** financial resources:

AAL, Inc.

AD International Co.

AJM Assets Holdings, LLC

AJM Development, LLC

AJM Partners, LLC

Are You Hotter, LLC

Aufarin Advisory Group

BBN, LLC

Betcoin.com and/or Bitcoin.com

BJK Enterprises, LLC

Bright Light Trading Company, LLC

Contact Center Remarketing Group LLC

DBD.net

Development Equity Group, LLC

Ecomm Venture Group, LLC

Ecomm Venture Group—CMM Group, LLC

Ecommventuregroup.com

8th and Camelback, LLC

Elite Digital Media

Express Jewelry Buyers, LLC

Expressjewelry buyers.com

Finance Marketing Group, LLC

First and Portland Development

Five Mile Global, Inc.

Freestand Financial Holding Corp.

Gemini Capital Advisors LLC

4828-0674-1812.3

| | |
|---|---|
| 1 | Gunslot LLC |
| 2 | Highline Partners, LLC |
| 3 | IDG Asset Backed Fund, LP |
| 4 | IDG Capital Management, LLC |
| 5 | iHome Manager |
| 6 | Jorn Homes, LLC |
| 7 | Kazitt.com |
| 8 | Kre8ive |
| 9 | Kronos Capital LLC |
| 10 | LAT Holdings, LLC |
| 11 | Lawsafety.net |
| 12 | Leadxcrm, LLC |
| 13 | MAQ Technology, LLC |
| 14 | Marvquin, LLC |
| 15 | Midas Jets, LLC |
| 16 | Midasjets.com |
| 17 | Milan Power Management Inc. |
| 18 | Mirrored Images, Inc. |
| 19 | MKT, Inc. |
| 20 | Modifications Loan LLC |
| 21 | Monkeytek, Inc. |
| 22 | Mosaic Mobile, LLC |
| 23 | Mountain Star Holdings, LLC |
| 24 | Mybellcow, LLC |
| 25 | Net Mobile Media, LLC |
| 26 | Netexposed |
| 27 | Off channel – www.offchannel.com |
| 28 | Offshore Incorporation Group Limited |

4828-0674-1812.3

Onei Beauty

Ownby Technology, LLC

Phoenix City Investments, LLC

Phoenix Investor Relations, LLC

PMHTec

Presence Pilot – www.presencepilot.com

Progressive Development, Inc.

Proliance, Inc.

Quantus Real Estate Services, Inc.

Saguaro Canyon Development, Inc.

Scottsdale Flight Academy, Inc.

Skylocal

Skylocal.com, LLC

Summit at Avondale LLC

Talktoalawyertoday.com

3rd & Portland Lofts, LLC

Triforce Energy Management, LLC

12pandas.com

Yamagata Studio

127.  Information discovered by the **CHAPTER 7 TRUSTEE** also indicates that **MCADAMS** owned, and continues to own, several valuable website domains that were not disclosed by **MCADAMS** or his defendant co-conspirators in any bankruptcy filings.  *See* excerpts of information obtained from Go Daddy, attached as **Exhibit 33**.

**VIII.    PARKER TESTIFIES, AND THEN SHE VANISHES.**

128.  Both the **CHAPTER 7 TRUSTEE** and **RES-AZ** had *extreme* difficulty getting **PARKER** to appear for her Rule 2004 Examination.  On several occasions, on the eve of, or otherwise shortly before the scheduled examination, **PARKER** would unexplainably cancel or otherwise fail to appear.

129.     Finally, on September 3, 2014, at the law offices of Guttilla Murphy Anderson, **PARKER** appeared for her Rule 2004 examination with her duly-retained then-attorney, Amber Guymon, *Esq*. (**GUYMON**).

130.     During **PARKER's** September 3, 2014 examination, she testified, among other things, that she did not own or control many of the legal entities that both **MCADAMS** and **EPLEY** had testified, under oath and the penalty of perjury, that she owned and controlled, including **CAP PARTNERS, LLC**, **US REFILOANS, LLC**; and **ENERGY REDUCTION CENTER, INC.** *See* Examination transcript of **PARKER** attached as **Exhibit 34**.

131.     **PARKER** also testified during her Rule 2004 examination that many of the documents produced by **MCADAMS** and **EPLEY**, which purported to evidence **PARKER's** ownership of certain legal entities and purported to have been signed by **PARKER**, had been forged or otherwise improperly altered.     *See* **Exhibit 34**.     To the extent **PARKER's** testimony is true then, upon information and belief, **MCADAMS** and his co-conspirators forged **PARKER's** signature on the dates identified in the respective documents, for the purpose of furthering the unlawful scheme alleged herein.

132.     **PARKER's** September 3, 2014 Rule 2004 examination was continued, and **PARKER** and **GUYMON** agreed to meet again with counsel for **RES-AZ**, the **CHAPTER 7 TRUSTEE**, and the **U.S. TRUSTEE**.

133.     During the September 11, 2014 meeting, **PARKER** stated that she had been physically abused by **MCADAMS** on numerous occasions — in one instance leading to a loss of consciousness for at least a day — and that she was very afraid of **MCADAMS**. **PARKER** stated that during her relationship with **MCADAMS**, she spent most, if not all, of her time taking care of **MCADAMS'** children and was not involved in any of the defendant businesses that she supposedly had created and managed. *See, also*, **Exhibit 34**.

134.     **PARKER** also stated during the September 11, 2014 meeting that she had never spoken to Mr. Rupprecht of the **SCHENK** firm or to **KAHN**, and that she had never authorized them to act on her behalf or to represent themselves as her counsel. **PARKER** stated  that she believed her mail was being intercepted by **MCADAMS** and that the mail she

4828-0674-1812.3

received was not complete and/or that her e-mail accounts had been compromised by **MCADAMS** or others acting on his behalf. [3]

135. During the September 11, 2014 meeting, **PARKER** played certain voice messages on her phone from **MCADAMS**, wherein he tried to convince her, through the use of threats and violence, to not appear for the **CHAPTER 7 TRUSTEE's** examination.

136. **PARKER** further stated at the September 11, 2014 meeting that she possessed information regarding the financial affairs of **MCADAMS**, which she would provide to counsel for **RES-AZ**, the **CHAPTER 7 TRUSTEE**, and the **U.S. TRUSTEE**. **PARKER** agreed she would provide such information within two (2) weeks following the September 11, 2014 meeting and prior to a scheduled visit to see her family in the Midwest.

137. **PARKER** never provided the information discussed in the preceding paragraph.

138. On or about October 6, 2014, **GUYMON** responded to e-mail inquiries sent by counsel for **RES-AZ** concerning the information **PARKER** had agreed to produce.

139. During the various communications between counsel for **RES-AZ** and **GUYMON**, **GUYMON** represented that she had certain information in her possession that she believed was what **PARKER** had promised, however, she could not reach her client to obtain authorization to transmit same.

140. According to **GUYMON**, when **PARKER** returned from her trip to the Midwest, **MCADAMS** was able to locate **PARKER**, who was living with her then-boyfriend David Simard. According to **GUYMON**, on the afternoon of October 3, 2014, **MCADAMS** called the police and falsely advised them that **PARKER** was being held against her will by Mr. Simard. The authorities responded and learned that **PARKER** was not being held against her will and then left without taking further action.

---

[3] The **ICONIC LITIGATION** defendants represented that **MCADAMS** employed "black hat marketers" who went by various aliases within **VC DYNAMICS, INC.** and served as computer hackers who targeted persons identified by **MCADAMS**.

141.    On the morning of October 4, 2014, **PARKER** disappeared, leaving all of her personal property behind, other than a firearm and a laptop, which Mr. Simard had retrieved with **PARKER** from a safety deposit box in **PARKER's** name.

142.    Mr. Simard contacted the authorities concerning **PARKER's** disappearance, and she was found in Maricopa County, Arizona, sitting in an automobile with **MCADAMS**. After conducting a well-check, the police released the parties, and that is the last time **GUYMON**, counsel for **RES-AZ**, the **CHAPTER 7 TRUSTEE**, or the **U.S. TRUSTEE** has known the whereabouts or heard from or about **PARKER**.

143.    Shortly after **PARKER** disappeared, on or around October 22, 2014, counsel for the **CHAPTER 7 TRUSTEE** and **RES-AZ** were each contacted by Mr. Simard regarding the information contained on a copy of **PARKER's** laptop.  *See* Simard e-mails dated October 22, 2014 attached as **Exhibit 35**.

144.    On or about October 31, 2014, counsel for **RES-AZ** subpoenaed the information relevant to **MCADAMS** from Mr. Simard, and the hard drive was delivered to the **CHAPTER 7 TRUSTEE** as part of the bankruptcy estate.    While some of the information on the hard drive was encrypted, much of it was not, and after a time-consuming and expensive investigation it showed that **MCADAMS** owned substantial assets and several off-shore companies that he had failed to disclose in the **BANKRUPTCY**.  Upon information and belief, such disclosure was intentional and for purposes of furthering the fraudulent scheme, as well as for the purposes of facilitating fraudulent transfers to hinder and delay **RES-AZ's** collection efforts.

145.    While **MCADAMS** worked with the **CHAPTER 7 TRUSTEE** and the **U.S. TRUSTEE** to reach a resolution to the **BANKRUPTCY**, counsel for **RES-AZ** was contacted by a private investigator, Brad Brown, who represented that he had been retained by **PARKER's** family to locate **PARKER**.

146.    Mr. Brown advised that the Parker family believed that **PARKER** was being held against her will by **MCADAMS** and that Mr. Brown was trying to identify times and

4828-0674-1812.3

dates **MCADAMS** might have to appear for proceedings attendant to the **BANKRUPTCY** in order to serve him with process aimed at locating **PARKER** and verifying her safety.

147.    **PARKER's** level of involvement in the scheme and transfers alleged herein remains unclear to **RES-AZ** at this time.   There is information to suggest that **MCADAMS** held **PARKER** against her will to prevent her from providing additional information concerning **MCADAMS'** assets and efforts to conceal them through unlawful means while he tried to settle with the **CHAPTER 7 TRUSTEE** and **U.S. TRUSTEE**.   However, there also is information to suggest that **PARKER** was a willing, and active participant in the scheme and that her "disappearance" was intentional, so she would continue to enjoy the luxurious lifestyle afforded by the scheme.

### IX.    MCADAMS' AND EPLEY'S FRAUDULENT BANKRUPTCY SETTLEMENT.

148.    At the time **PARKER** agreed to testify in the **BANKRUPTCY**, **MCADAMS** and **EPLEY** made overtures to the **U.S. TRUSTEE** and the **CHAPTER 7 TRUSTEE** concerning settlement of the **BANKRUPTCY**.

149.    Upon information and belief, **MCADAMS**, **EPLEY**, and other defendants wanted to settle with the **U.S. TRUSTEE** and the **CHAPTER 7 TRUSTEE**, because, among other things, **PARKER** had refused to sign several falsified tax returns that were prepared in or around May 2014, by the law firm of Burch and Cracchiolo, P.A., at the direction of **MCADAMS**.   *See, e.g.,* <u>Exhibit 34</u>.

150.    Upon information and belief, the tax returns that were allegedly prepared by Burch and Cracchiolo, P.A. were prepared at the direction of **MCADAMS** to reflect the false information in the sworn testimony of **MCADAMS** and **EPLEY** regarding **PARKER's** alleged ownership of the various legal entities fraudulently identified by **MCADAMS** and **EPLEY** as part of the **BANKRUPTCY**.

151.    However, upon information and belief, **PARKER,** did not own or operate the legal entities as alleged by **MCADAMS** and **EPLEY**, and she refused to execute the

32

fraudulent tax returns prepared by Burch and Cracchiolo, P.A. given her position at her Rule 2004 Examination that she did not own, or operate the entities.

152.    On or around August 29, 2014, **MCADAMS** produced through his attorneys certain tax returns dated June 26, 2014 allegedly prepared by Janet L. Crance **(BANKRUPTCY RETURNS)**.    A true and accurate copy of the **BANKRUPTCY RETURNS** is attached as **Exhibit 36**.

153.    The **BANKRUPTCY RETURNS** were required for purposes of any settlement of the **BANKRUPTCY** because **MCADAMS** had failed to file tax returns for several years prior to the **BANKRUPTCY**.

154.    In an effort to settle with both the **U.S. TRUSTEE** and the **CHAPTER 7 TRUSTEE**, **MCADAMS** executed the **BANKRUPTCY RETURNS**, under oath notwithstanding the information provided by **MCADAMS** and **EPLEY**, among others, established that **MCADAMS** had no authority to sign the **BANKRUPTCY RETURNS**. **RES-AZ** currently is unaware as to whether the signed **BANKRUPTCY RETURNS** were ever filed with the relevant federal and state taxing authorities.    However, they were submitted through the mails and/or by wire to the **U.S. TRUSTEE** and the **CHAPTER 7 TRUSTEE**, for purposes of furthering the scheme.

155.    On September 12, 2014, **MCADAMS** filed yet another amendment to his Statement of Financial Affairs, through and using the mails and/or wires, which disclosed additional assets that he had previously intentionally omitted.  **(the "THIRD AMENDED SOFAS")**.  A true and accurate copy of the **THIRD AMENDED SOFAS** is attached as **Exhibit 37**.

156.    The information set forth in **THIRD AMENDED SOFAS**, submitted under penalty of perjury, establishes that **MCADAMS** committed perjury not only in the **SOFAS** he provided in the **BANKRUPTCY** (using the mails and/or wires) prior to the **THIRD AMENDED SOFAS**, but also that both **MCADAMS** and **EPLEY** had committed perjury during their depositions, in which they falsely avowed, among other things, that the following companies were <u>not</u> owned by **MCADAMS**:

33

| | | |
|---|---|---|
| 1 | a. | US Refiloans, LLC |
| 2 | b. | Paradigm Equity |
| 3 | c. | Versachannel |
| 4 | d. | Random Software Group, LLC |
| 5 | e. | CAP Partners, LLC |
| 6 | f. | Phoenix Investor Relations, LLC |
| 7 | g. | Finance Marketing Group, LLC |
| 8 | h. | Energy Reduction Center, Inc. |
| 9 | i. | MAQ Technology, LLC |
| 10 | j. | Searchtoppers.com, LLC |
| 11 | k. | Southgate Technology, LLC |
| 12 | l. | BBN, LLC |
| 13 | m. | Mosaic Mobile, LLC |

157. The **THIRD AMENDED SOFAS** also demonstrate that **MCADAMS** committed perjury during his Rule 2004 examination, where he knowingly and intentionally failed to identify or account for approximately $138,000 in transfers to **PARKER** and his mother, **ELIZABETH**, which were made with the intent and effect of depleting his bankruptcy estate without receipt of value.

158. The **THIRD AMENDED SOFAS** demonstrate, *inter alia*, that **MCADAMS** committed perjury when he responded to those certain "Request for Production of Documents and Things Previously Propounded" and "Uniform Interrogatories and Respondent's Answers Thereto" (collectively the "**Family Law Discovery**") filed in the matter captioned *In re the Matter of: Tina McAdams, Petitioner and Andrew McAdams Respondent*, Case No. FC2005-52072, in the Superior Court for Maricopa County, Arizona, in which he executed a Declaration asserting that the contents of the filing were true "to the best of his knowledge, information and belief." True and accurate copies of the **Family Law Discovery** are attached as **Exhibit 38**.

159.    **MCADAMS** perjured himself when he represented through a declaration in the **Family Law Discovery** that, among other things, "I have not been an employee of any company for the last three years.    I do projects to assist my wife's company and the only compensation is that my wife pays all household bills." *See* **Exhibit 38**.

160.    On, or around November 4, 2014, the Bankruptcy Court approved a Stipulated Order for Waiver of Discharge **MCADAMS** entered into with the **U.S. TRUSTEE**, pursuant to which he permanently waived his ability to obtain a discharge under the bankruptcy code for his debts including, but not limited to, the debt owed to **RES-AZ** and memorialized by the **JUDGMENT ("DISCHARGE WAIVER")**.    A true and accurate copy of the **DISCHARGE WAIVER** is attached as **Exhibit 39**.

161.    An agreed waiver of discharge is *highly* unusual.  Upon information and belief, **MCADAMS** entered into the **DISCHARGE WAIVER** with the **U.S. TRUSTEE** in an effort to avoid being prosecuted for bankruptcy crimes.

162.    On or around October 28, 2014, **MCADAMS**, and **EPLEY**, among others, entered into a stipulation with the **CHAPTER 7 TRUSTEE** in an effort to avoid the **CHAPTER 7 TRUSTEE's** prosecution of her claims against **MCADAMS**, **EPLEY**, and various legal entities named herein **(CHAPTER 7 TRUSTEE SETTLEMENT)**.  A true and accurate copy of the **CHAPTER 7 TRUSTEE SETTLEMENT** is attached as **Exhibit 40.**

163.    As recounted in more detail in the **CHAPTER 7 TRUSTEE SETTLEMENT**, and, upon information and belief, **ELIZABETH** received fraudulent transfers totaling approximately $40,000 (twice the amount falsely represented by **MCADAMS** in the **THIRD AMENDED SOFAS**) from **MCADAMS**. *See* **Exhibits 37 & 40**. **ELIZABETH** knowingly received such funds for purposes of furthering the scheme to hide and conceal **MCADAMS'** assets, and she did not provide any value in return for such funds.

164.    Pursuant to the terms of the **CHAPTER 7 TRUSTEE SETTLEMENT**, **MCADAMS**, and various entities allegedly owned and controlled by **EPLEY**, were required to pay $375,000 to the **CHAPTER 7 TRUSTEE** over a period of time in exchange for a release from the **CHAPTER 7 TRUSTEE** of her claims. *See* **Exhibit 40**.

165.     Upon information and belief, **MCADAMS**, **EPLEY**, and the other guarantors to the **CHAPTER 7 TRUSTEE SETTLEMENT** did not intend to honor the **CHAPTER 7 TRUSTEE SETTLEMENT** at the time they signed and executed the document. **MCADAMS**, **EPLEY** and the other guarantors defaulted on the **CHAPTER 7 TRUSTEE SETTLEMENT** within three (3) months of the first payment, and after paying only $95,000.

166.     While **MCADAMS** and **EPLEY** were negotiating the **CHAPTER 7 TRUSTEE SETTLEMENT**, they fraudulently induced Ali Asayesh to provide a substantial sum of money to supposedly purchase a significant portion of **VC DYNAMICS, INC.**

167.     Upon information and belief, the transaction between **MCADAMS**, **EPLEY**, **VC DYNAMICS, INC.**, and/or Mr. Asayesh was never fully disclosed to the **CHAPTER 7 TRUSTEE**, and it was an effort by **MCADAMS**, **EPLEY**, **VC DYNAMICS, INC.** and others to defraud the **CHAPTER 7 TRUSTEE** and otherwise move assets beyond the reach of the **CHAPTER 7 TRUSTEE** and **MCADAMS'** creditors, including **RES-AZ**.

168.     On or around December 3, 2015, the **CHAPTER 7 TRUSTEE** opened a new adversary proceeding, and on February 18, 2016, she obtained a default judgment against **MCADAMS**, **PARKER** and the other guarantors based on their failure to satisfy the **CHAPTER 7 TRUSTEE SETTLEMENT**.  A true and accurate copy of the **CHAPTER 7 TRUSTEE's** default judgment as relevant to the **CHAPTER 7 TRUSTEE SETTLEMENT** is attached as **Exhibit 41**.

## X.     THE FORENSIC ANALYSIS OF PARKER'S HARD DRIVE.

169.     While **MCADAMS**, **EPLEY**, and the various legal entities named herein were documenting their respective settlements with the **U.S. TRUSTEE** and the **CHAPTER 7 TRUSTEE**, **RES-AZ** had a copy of the hard drive obtained from Mr. Simard delivered to a forensic computer expert for analysis.

170.     **RES-AZ's** analysis of the hard drive is ongoing.  From the information that **RES-AZ** has obtained from the hard drive, it has discovered that **MCADAMS** was, and continues, to possess significant wealth that was not disclosed in the **BANKRUPTCY**, and

4828-0674-1812.3

he and his defendant co-conspirators have employed a complex scheme involving the use of off-shore corporations to conceal such wealth. The information further establishes that **MCADAMS** and **EPLEY** repeatedly committed perjury, both in the form of written statements and also in their respective depositions provided in the **BANKRUPTCY**.

171. Upon information and belief, in, and around September/October 2013, **MCADAMS** acquired a yacht in Florida. *See* **Exhibit 32**. During the pendency of the **BANKRUPTCY**, **MCADAMS** repeatedly failed to disclose, but rather affirmatively concealed, that he owned a yacht. *See* **Exhibits 18, 24, 26 & 37.**

172. On or about November 8, 2013, **MCADAMS**, with assistance from **MOTAMEDI**, acquired **SET SAIL GLOBAL LIMITED** from Offshore Incorporation Group Limited **("OIL")**. *See* **Exhibit 43**. **MCADAMS** made such acquisition for the purpose of using the entity to hide and conceal **MCADAMS'** assets.

173. In an e-mail dated December 19, 2013, **MCADAMS** represented that he purchased two (2) offshore companies from **OIL** for approximately $4,200 U.S. *See* **Exhibit 44**. At the time of the purchase, **MCADAMS** and his defendant co-conspirators planned to use, and in fact did use, the companies to hide assets that he had failed to disclose in the **BANKRUPTCY**.

174. In or about December 2013 (approximately two (2) months after he filed the **BANKRUPTCY**), **MCADAMS** and **PARKER** travelled to Hong Kong with **MOTAMEDI** to create certain off-shore companies and/or bank accounts involving HSBC, Hong Kong and **OIL**. *See* **Exhibit 45**. The entities were formed for the purpose of transferring and housing assets that **MCADAMS** and his defendant co-conspirators had used as unlawful means to hide and conceal from those with financial and legal interest in the **BANKRUPTCY**.

175. Upon information and belief, **MCADAMS** with the assistance of **MOTAMEDI** established a bank account for **PREFERRED MARKET HOLDINGS LIMITED (PREFERRED)** in Hong Kong. *See* **Exhibit 46**. **PREFERRED** was utilized to receive funds that had been concealed from **RES-AZ** and others in the **BANKRUPTCY**.

4828-0674-1812.3

176.     In or around January 2014, **MCADAMS** opened a bank account with HSBC Hong Kong in the name of **PREFERRED** at account number XXX-XXXXXX-838. *See* **Exhibit 46**.

177.     Upon information and belief, on or about April 22, 2014, **MCADAMS** made payments into an account maintained by HSBC, New Delhi, bearing the following account number XXX-XXX-XXX001. *See* **Exhibit 47**.  Upon information and belief, the foregoing account is related either to **PREFERRED** or **SET SAIL GLOBAL LIMITED** and was created for purposes of the fraudulent scheme described herein.

178.     **RES-AZ's** analysis of the information on the hard drive also disclosed that **MCADAMS** owns a 2010 Rolls-Royce Ghost, vehicle identification number: SCA664S5XAUX48863.  On April 30, 2014, **MCADAMS** falsely testified that he did not own any of the luxury cars inquired about as part of the **BANKRUPTCY**, including the aforementioned vehicle. *See* **Exhibit 48 & 57**.

179.     **RES-AZ's** analysis of the information on the hard drive also disclosed that **MCADAMS** owns a 1991 Hawker Beechjet 400A Aircraft, serial number RK-10, through **VC DYNAMICS, INC.** and/or **VC SOLUTIONS, LLC** and/or **VCD Aviation**. *See* **Exhibit 31**.  **MCADAMS** and **EPLEY** falsely testified that **MCADAMS** had no interest in said airplane.

180.     The information **RES-AZ** has obtained from discovery in the **BANKRUPTCY** and its review of the hard drive establishes that the defendants named herein engaged in a widespread scheme to hide and conceal **MCADAMS'** substantial assets, which in-turn directly benefited each of the various participants in the scheme, as they all enjoyed the benefits of the wealth that was hidden and concealed.

181.     Each of the following Counts is brought against every defendant identified above, unless otherwise noted.

/ / /

/ / /

/ / /

## COUNT I
## CIVIL RICO, 18 U.S.C. § 1962(a), 1962(b), and 1962(c)

182.     **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-181 and referenced exhibits in this Complaint, as if fully set forth herein.

183.     At all relevant times, **RES-AZ** was a "person" within the meaning of RICO, Title 18 United States Code Sections 1961(3) and 1964(c), and defendants were "persons" within the meaning of the Racketeering Influenced and Corrupt Organization Act ("RICO"), Title 19 United States Code Sections 1961(3) and 1962(c).

184.     At all relevant times in this complaint, **MCADAMS, EPLEY, JONES, MOTAMEDI, CORA, ELIZABETH, and PARKER, (the MCADAMS DEFENDANTS) and VC DYNAMICS, INC., VC SOLUTIONS, LLC, CAP PARTNERS, LLC, CONVERSION GENIE, INC., AJM CAPITAL, LLC, AJM DEVELOPMENT, LLC, MARVQUIN, LLC, PREFERRED MARKET HOLDINGS LIMITED, ROSECREST GLOBAL, ROSECREST INVESTMENTS LIMITED, SET SAIL GLOBAL LIMITED, US REFILOANS, LLC, ENERGY REDUCTION CENTER, INC., RANDOM SOFTWARE GROUP, LLC and RSG HOSTING, INC. (the SHAM COMPANIES)** formed an associated-in-fact enterprise within the meaning of 18 U.S.C. §1961(4).

185.     Alternatively, at all relevant times in this complaint, **MCADAMS, EPLEY, JONES, MOTAMEDI, and PARKER**, and **VC DYNAMICS, INC., VC SOLUTIONS, LLC, CAP PARTNERS, LLC, CONVERSION GENIE, INC., AJM CAPITAL, LLC, AJM DEVELOPMENT, LLC, MARVQUIN, LLC, PREFERRED MARKET HOLDINGS LIMITED, ROSECREST GLOBAL, ROSECREST INVESTMENTS LIMITED, SET SAIL GLOBAL LIMITED**, and **US REFILOANS, LLC, RANDOM SOFTWARE GROUP, LLC**, and **RSG HOSTING, INC.** formed an associated-in-fact enterprise within the meaning of 18 U.S.C. §1961(4), and **CORA, ELIZABETH** and **ENERGY REDUCTION CENTER, INC.** knowingly assisted and received the proceeds of such enterprise.

4828-0674-1812.3

186. The purpose and goal of the enterprise was to fraudulently conceal and hide **MCADAMS'** assets through unlawful means, and to further conceal such scheme through unlawful means, and to otherwise carry-out and accomplish the fraudulent scheme described in this Complaint.

187. At all relevant times, defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, Title 18 United States Code 1961(5), in violation of RICO, Title 18 United States Code Section 1962(c).

188. At all relevant times, defendants engaged in "racketeering activity" within the meaning of Title 18 United States Code §1961(1), by engaging in two or more of the acts set forth above and/or described below within a ten-year period. The acts set forth above and/or those identified herein below constitute a violation of one or more of the following statutes: Title 18 United States Code Section 1341 (mail fraud); Title 18 United States Code Section 1343 (wire fraud); Title 18 United States Code Sections 1956, 1957 (money laundering); Title 18 United States Code Section 1512 (witness tampering); Title 18 United States Code Section 1344 (financial institution fraud); Title 18 United States Code Section 1503 (obstruction of justice); and Title 18 United States Code 1513 (witness retaliation).

189. As part of Defendants' fraudulent scheme and conspiracy, the **MCADAMS DEFENDANTS**, with and through the **SHAM COMPANIES** that they created and/or controlled, operated and managed the enterprise by engaging in, among other things, the acts identified above and listed below. Each of the defendants either personally made the decision that the enterprise should engage in, among other things, the acts described above and below, or knowingly implemented the decision to engage in, among other things, such acts.

190. The fraudulent scheme to conceal and shield **MCADAMS'** wealth through the use of unlawful means began in or around September 2013 and it continues to this day. In connection with defendant's scheme, the acts of racketeering activity have occurred after the effective date of the RICO statutes, 18 U.S.C. § 1961, *et seq.*, and on numerous occasions over a substantial time period of approximately three years and within ten years of each other.

40

Defendants' conduct has involved and continues to pose a threat of long-term criminality. As a direct and proximate result of the scheme, **RES-AZ** has incurred injury within the United States.

191.    As part of their pattern of racketeering activity, and in order to carry out or attempt to carry out the unlawful scheme and to further conceal such scheme once there was a threat it would be exposed, defendants placed and/or or caused to be placed through their agents and representatives, in authorized depositories for mail, fraudulent matter to be delivered by the United States Postal Service or by a private or commercial interstate carrier according to the directions thereon, and/or took and received and caused to be taken and received from the mail or such carrier certain mail matter. Such unlawful use of the mails for the furtherance and concealment of the scheme included, but was not limited to, the following:

| DESCRIPTION | APPROX. DATE OF MAILING | SENDER | RECIPIENT | NATURE OF MAILING |
|---|---|---|---|---|
| 2003 Returns (*See*, **Exhibit 1**) | 4/13/2005 | McAdams Epley | Columbian | Upon information and belief |
| 2003 Epley Tax Returns (*See*, **Exhibit 27**) | 11/27/2013 | Epley VC Dynamics | Joseph WM. Kruchek Kelley E. Braden Jacob L. Sherrard Kutak Rock, LLP | Response to 2004 Order to Douglas Epley and VC Dynamics, Inc. Documents served electronically. |
| 2004 Returns (*See*, **Exhibit 2**) | 5/9/2006 | Epley McAdams | Columbian | Upon information and belief |

41

4828-0674-1812.3

| | | | | |
|---|---|---|---|---|
| 2004 Epley Tax Returns<br><br>(*See*, **Exhibit 28**) | 11/27/2013 | Epley<br>VC Dynamics | Joseph WM. Kruchek<br>Kelley E. Braden<br>Jacob L. Sherrard<br>Kutak Rock, LLP | Response to 2004 Order to Douglas Epley and VC Dynamics, Inc. Documents served electronically. |
| 2005 Financial Statement<br><br>(*See*, **Exhibit 5**) | 8/1/2005 | McAdams | Columbian | Upon information and belief |
| 2005 Returns<br><br>(*See*, **Exhibit 7**) | 11/11/2007 | Epley<br>McAdams | Columbian | Upon information and belief |
| 2005 Epley Tax Returns<br><br>(*See*, **Exhibit 29**) | 11/27/2013 | Epley<br>VC Dynamics | Joseph WM. Kruchek<br>Kelley E. Braden<br>Jacob L. Sherrard<br>Kutak Rock, LLP | Response to 2004 Order to Douglas Epley and VC Dynamics, Inc. Documents served electronically. |
| January 2007 Financial Statement<br><br>(*See*, **Exhibit 8**) | 1/5/2007 | McAdams | Columbian | Upon information and belief |
| February 2007 Financial Statement<br><br>(*See*, **Exhibit 9**) | 2/22/2007 | McAdams | Columbian | Upon information and belief |
| November 2007 Financial Statement<br><br>(*See*, **Exhibit 13**) | 11/14/2007 | McAdams | Columbian | Upon information and belief |
| Family Law Discovery | 4/23/2012 | McAdams | Maricopa County Superior Court | Upon information |

| | | | | |
|---|---|---|---|---|
| (*See*, **Exhibit 38**) | | | Case No. FC2005-052072 and John Herrick, Esq. (Attorney for Petitioner) | and belief |
| Initial SOFAS (*See*, **Exhibit 18**) | 9/23/2013 | McAdams | U.S. District Bankruptcy Court, for the District of Arizona (Case No. 2:13-bk-15294-MCW U.S. Trustee RES-AZ | Electronically filed at U.S. Bankruptcy Court Docket No. 19 |
| First Revised SOFAS (*See*, **Exhibit 24**) | 10/18/2013 | McAdams | U.S. District Bankruptcy Court, for the District of Arizona (Case No. 2:13-bk-15294-MCW U.S. Trustee RES-AZ | Electronically filed at U.S. Bankruptcy Court Docket No. 84 |
| Response to Rule 2004 Order filed by Mountain Star Dev., Inc. (*See*, **Exhibit 4**) | 11/25/2013 | Mountain Star Dev., Inc. | U.S. District Bankruptcy Court, for the District of Arizona (Case No. 2:13-bk-15294-MCW U.S. Trustee RES-AZ | Electronically filed at U.S. Bankruptcy Court Docket No. 99 |
| Motions filed by Epley to gain access to McAdams Rule 2004 Examination (*See*, **Exhibit 22**) | 2/6/2014 – 2/10/2014 | Epley | U.S. District Bankruptcy Court, for the District of Arizona (Case No. 2:13-bk-15294-MCW U.S. Trustee RES-AZ | Electronically filed at U.S. Bankruptcy Court Docket Nos. 163 and 184 |
| Second Revised SOFAS (*See*, **Exhibit 26**) | 3/5/2014 | McAdams | U.S. District Bankruptcy Court, for the District of Arizona (Case No. 2:13-bk-15294-MCW U.S. Trustee RES-AZ | Electronically filed at U.S. Bankruptcy Court Docket No. 233 |

43

4828-0674-1812.3

| | | | | |
|---|---|---|---|---|
| Complaint<br><br>Certificate of Arbitration<br><br>Application for Temporary Restraining Order<br><br>Motion for Accelerated Discovery<br><br>Affidavit of Babak Motamedi<br><br>(*See*, **Exhibit 23**) | 4/29/2014 | Motamedi<br>Epley | Maricopa County Superior Court in the case *VC Dynamics, Inc. v. Iconic Results, LLC*, et al.(CV2014-007422) | Maricopa County Superior Court docket including all filings for VC Dynamics v. Iconic Results |
| Bankruptcy Tax Returns<br><br>(*See*, **Exhibit 36**) | 8/29/2014 | McAdams | Scott Weiner<br>Nussbaum Gillis & Dinner | Alisan Patten<br>Guttilla Murphy Anderson. |
| Third Revised SOFAS<br><br>(*See*, **Exhibit 37**) | 9/12/2014 | McAdams | U.S. District Bankruptcy Court, for the District of Arizona (Case No. 2:13-bk-15294-MCW<br><br>U.S. Trustee<br><br>RES-AZ | Electronically filed at U.S. Bankruptcy Court Docket No. 322 |
| Trustee Settlement<br><br>(*See*, **Exhibit 40**) | 10/28/2014 | McAdams<br>Epley<br>VC Dynamics<br>RSG Hosting<br>AJM Capital<br>AJM Dev. | U.S. District Bankruptcy Court, for the District of Arizona (Case No. 2:13-bk-15294-MCW<br><br>U.S. Trustee<br><br>RES-AZ | Electronically filed at U.S. Bankruptcy Court Docket No. 344 |

44

| Various Filings Evidenced by Records Kept by the Arizona Corporation Commission and the Oregon Secretary of State | Various Dates | Epley McAdams | Court AZ Corp. Commission Oregon Secretary of State Trustee US Trustee RES-AZ | Upon information and belief |
| --- | --- | --- | --- | --- |

192.     As part of their pattern of racketeering activity, and in order to carry out or attempt to carry out the fraudulent scheme once there was a threat it would be exposed, defendants transmitted and/or caused to be transmitted individually and/or through their authorized agents and representatives, by means of wire communication in interstate commerce, fraudulent writings, signs, signals, pictures and sounds, to wit, telephonic, fax and electronic mail transmissions.  Such transmissions included the electronic deposit of income earned by **MCADAMS** from his involvement with **VC DYNAMICS, INC**. into bank accounts at Wells Fargo under the name of **US REFILOANS, LLC** and the joint use of those accounts by **VERSACHANNEL, PARADIGM EQUITY PARTNERS** and by defendants **MCADAMS, EPLEY, PARKER**, and **CAP PARTNERS, LLC** for the personal benefit and expenses of defendants **MCADAMS** and **PARKER** in an attempt to conceal available assets from attachment and collection efforts of **RES-AZ**.

193.     The following are examples of such transmissions, using the wires and otherwise affecting interstate commerce, which were directed and/or received by **MCADAMS, EPLEY, MOTAMEDI, PARKER, VC DYNAMICS, US REFILOANS, LLC**, and **CORA** for purposes of furthering the fraudulent scheme:

**I.**     *REFILOANS, LLC dba VERSACHANNEL (account no. XXXXXX0140)*[4]

a.     <u>9/2013</u>     Online transfers of $1,250 to **PARKER**

---

[4] A true and accurate copy of the relevant portion of bank statements for Wells Fargo Account No. XXXXXX0140 is attached hereto as **<u>Exhibit 50</u>**.

4828-0674-1812.3

|   |   |   |   |
|---|---|---|---|
| b. | 8/2013 | Online transfers from **VC DYNAMICS, INC.** totaling $4,000 |
| c. | 8/2013 | Online transfers to **PARKER** totaling $900.00 |
| d. | 7/2013 | Online transfers from **VC DYNAMICS, INC.** totaling $2,235 |
| e. | 7/2013 | Online transfers to **PARKER** totaling $1,498.00 |
| f. | 6/2013 | Online transfers from **VC DYNAMICS, INC.** totaling $4,000 |
| g. | 5/2013 | Online transfers from **VC DYNAMICS, INC.** totaling $5,500 |
| h. | 5/2013 | Online transfers to **PARKER** totaling $1,950 |
| i. | 4/2013 | Online transfers from **VC DYNAMICS, INC.** totaling $4,000 |
| j. | 3/2013 | Online transfers from **VC DYNAMICS, INC.** totaling $5,500 |
| k. | 2/19/2013 | Online transfer from **VC DYNAMICS, INC.** of $1,000 |
| l. | 8/16/2012 | Check Card purchase of $351 from the Tan Factory |
| m. | 6/03/2011 | Withdrawal by **MCADAMS** of $1,500 |
| n. | 01/14/2011 | Withdrawal by **MCADAMS** of $3,710 |

II. *REFILOANS, LLC dba PARADIGM EQUITY PARTNERS (account no. XXXXXX5553 formerly under the name of CAP PARTNERS, LLC and under the name of PARKER)*[5]

|   |   |   |   |
|---|---|---|---|
| a. | 5/07/2012 | Check Card purchase of $294 for Skin Products |
| b. | 5/30/2012 | Check Card purchase of $503 from Hugo Boss |
| c. | 4/04/2012 | Check Card Purchase of $2,500 for Rose Law Group |
| d. | 4/05/2012 | Check Card Purchase of $2,500 for Rose Law Group |

---

[5] A true and accurate copy of the relevant portion of bank statements for Wells Fargo Account No. XXXXXX5553 is attached hereto as **Exhibit 51**.

| | | | |
|---|---|---|---|
| | e. | 4/09/2012 | Check Card purchase of $750 from Yves St. Laurent |
| | f. | 10/24/2012 | Withdrawal by **MCADAMS** of $1,500 |
| | g. | 12/05/2011 | Withdrawal by **MCADAMS** of $6,726 |
| | h. | 11/21/2011 | Withdrawal by **MCADAMS** of $1,500 |
| | i. | 09/16/2011 | Withdrawal by **MCADAMS** of $28,253 |
| | j. | 05/20/2011 | Withdrawal by **MCADAMS** of $30,000 |
| | k. | 05/04/2011 | Withdrawal by **MCADAMS** of $28,000 |
| | l. | 3/12/2013 | Check to Karen Slattery ("Fabrics") totaling $2,675 |
| | m. | 02/07/2013 | Check to Karen Slattery ("Cushions") totaling $2,700 |
| | n. | 7/26/2012 | Check to Mary Ellen Barker ("Drapes") totaling $2000 |
| | o. | 7/01/2011 | Check to Clearing House ("Child Support") totaling $1,325 |

194.    **EPLEY**, **MCADAMS** and **PARKER**, with the assistance and approval of **MOTAMEDI**, also conspired to, and **EPLEY** transmitted and/or authorized the transmittal by means of wire communications in interstate commerce, fraudulent writings, signs, signals, pictures and sounds, to wit:  telephonic, fax and electronic mail transmissions of wages to **MCADAMS** and funds to **PARKER** through bank accounts in the name of Random Software Group, LLC, for the purpose of concealing from **RES-AZ**, income earned by **MCADAMS** and for the purpose of **MCADAMS** and **PARKER's** use of said transmittals for their personal expenses.

195.    The following are examples of such transmittals and use for purposes of furthering the fraudulent scheme described herein:

**I.** *Random Software Group, LLC, Account Number XXXXXX4464*[6]

| | | | |
|---|---|---|---|
| | a. | 8/05/2013 | Online transfer from **VC DYNAMICS, INC.** of $500 |
| | b. | 8/2013 | Online transfers to **PARKER** totaling $400 |
| | c. | 5/15/2013 | Online transfer from **VC DYNAMICS, INC.** of $500 |

---

[6] A true and accurate copy of the relevant portion of bank statements for Wells Fargo Account No. XXXXXX4464 is attached hereto as **Exhibit 52**.

4828-0674-1812.3

| | | | |
|---|---|---|---|
| | d. | <u>5/21/2013</u> | Online transfer to **PARKER** of $900 |
| | e. | <u>4/2013</u> | Online transfers from **VC DYNAMICS, INC.** totaling $1,000 |
| | f. | <u>4/17/2013</u> | Online transfer to **PARKER** of $300 |
| | g. | <u>3/26/2013</u> | Online transfers from **VC DYNAMICS, INC.** totaling $450 |

**II.**      *Random Software Group, LLC, Account Number XXXXXX8798*[7]

| | | | |
|---|---|---|---|
| | a. | <u>9/03/2013</u> | Online transfer to **PARKER** of $500 |
| | b. | <u>9/25/2013</u> | Online transfer from **VC DYNAMICS, INC.** of $1,500 |
| | c. | <u>8/2013</u> | Online transfers from **VC DYNAMICS, INC.** totaling $5,500 |
| | d. | <u>8/12/2013</u> | Online transfer to **PARKER** of $200 |
| | e. | <u>7/2013</u> | Online transfers from **VC DYNAMICS, INC.** totaling $5,325 |
| | f. | <u>7/2013</u> | Check Credit purchases at the Bebe Store totaling $205 |
| | g. | <u>7/2013</u> | Check Credit purchase at Saks Fifth Ave totaling $150 |
| | h. | <u>7/30/2013</u> | Online transfer to **PARKER** of $300 |
| | i. | 6/2013 | Online transfers from VC DYNAMICS, INC. totaling $2,000 |
| | j. | <u>6/08/2013</u> | Check Credit purchase at Artistic Nail of $73 |
| | k. | <u>6/11/2013</u> | Check Credit purchase at Luster Nail Spa of $35 |
| | l. | <u>05/2013</u> | Online transfers from **VC DYNAMICS, INC.** totaling $8,500 |
| | m. | <u>04/2013</u> | Online transfers from **VC DYNAMICS, INC.** totaling $8,500 |
| | n. | <u>4/05/2013</u> | Check Credit purchase at Nordstrom Rack of $658 |

---

[7] A true and accurate copy of the relevant portion of bank statements for Wells Fargo Account No. XXXXXX8798 is attached hereto as **<u>Exhibit 53</u>**.

4828-0674-1812.3

| 1 | o. | 4/2013 | Online transfers to **PARKER** totaling $1,100 |

1      o.    4/2013     Online transfers to **PARKER** totaling $1,100

2      p.    3/2013     Online transfers from VC DYNAMICS, INC. totaling

3                         $6,500

4      q.    02/2013    Online transfers from **VC DYNAMICS, INC.** totaling

5                         $2,800

196.   **MCADAMS** committed wire fraud on at least the following dates, when he used the wires to transmit fraudulent information for purposes of furthering the scheme: September 3, 2013 (Date of Petition for **BANKRUPTCY**); September 23, 2013 (**SOFAs**); October 18, 2013 ("**First Amended SOFAS**"); March 5, 2014 ("**SECOND AMENDED SOFAS**"); September 12, 2014 ("**THIRD AMENDED SOFAS**"). On such dates, **MCADAMS** sent and directed and caused his agents to electronically file those documents identified in the true and accurate copy of the docket report maintained by the Bankruptcy Court for the District of Arizona attached hereto as **Exhibit 22**.

197.   **EPLEY** committed mail and/or wire fraud on at least April 29, 2014, when he sent and caused his agents to electronically file the documents in the **ICONIC LITIGATION**, which falsely represented that **MCADAMS** did not own or control **VC DYNAMICS, INC.** and/or **CONVERSION GENIE, INC.** as evidenced by that certain docket report from the Maricopa County Superior Court attached hereto as **Exhibit 23**.

198.   **MOTAMEDI** committed mail and/or wire fraud on at least April 29, 2014 when he caused his agents to electronically file the documents in the **ICONIC LITIGATION** indicating that **MCADAMS** did not own or control **VC DYNAMICS, INC.** and/or **CONVERSION GENIE, INC.**, as evidenced by that certain docket report from the Maricopa County Superior Court attached hereto as **Exhibit 23**.

199.   Each transmission described above was, on information and belief, in furtherance of the fraudulent scheme or to conceal or otherwise hide the scheme, and had the same or similar purpose, results, participants, and victims.

200.   Upon information and belief, each of the defendants had specific knowledge that the mails and wires were being utilized in furtherance of the overall purpose of the

49

scheme to defraud, and/or it was reasonably foreseeable that the mails and wires would be used in connection with the furtherance of the scheme.

201.    The frequency and number of acts of mail and wire fraud demonstrate that the use of the mail and/or interstate wire communication in violation of 18 U.S.C. §§ 1341 and 1343 was and is an ongoing and continuing pattern and practice for the **MCADAMS DEFENDANTS**.

202.    As part of the pattern of racketeering activity, and in order to carry out or attempt to carry out the fraudulent scheme and to cover up the scheme once there was a threat it would be exposed, **MCADAMS** also tampered with, and otherwise retaliated against, witnesses attendant to the **BANKRUPTCY** in violation of 18 U.S.C. §§ 1512 & 1513 as follows.

a)      Upon information and belief, **MCADAMS** physically assaulted Mr. Wilhoit, a creditor of **MCADAMS** and a witness in the **BANKRUPTCY**, as well as in a civil action brought by Mr. Wilhoit to enforce his claims against **MCADAMS**, for purposes of intimidating Mr. Wilhoit in his testimony and pursuit of claims.

b)      Upon information and belief, and as described more fully above, **MCADAMS** also hired several attorneys on behalf of **PARKER** without her knowledge, consult, or consent, in an effort to prevent both **RES-AZ** and the **CHAPTER 7 TRUSTEE** from deposing **PARKER** as part of the **BANKRUPTCY** or otherwise obtaining relevant information from her.

c)      After **PARKER** had actually retained her own counsel (**GUYMON**) and indicated she would comply with the various Rule 2004 Order propounded upon her by the Bankruptcy Court, **MCADAMS** intimidated **PARKER** in an attempt to cause her to refrain from providing truthful testimony.

d)      Upon information and belief, and as part of the pattern of racketeering activity and in order to carry out or attempt to carry out the scheme and to further conceal the scheme once there was a threat it would be exposed on, or about, October 3, 2014, **MCADAMS** either (i) absconded with **PARKER** against **PARKER's** will or through the use of threats of,

50

or actual, physical violence, for purposes of threatening and intimidating **PARKER** to refrain from providing additional testimony in the **BANKRUPTCY**; or (2) convinced **PARKER** to disappear and refrain from providing information as she had agreed, for purposes of advancing the scheme.

203. Defendants were aware, or had knowledge of, among other things, the essential nature and scope of the enterprise and each knowingly intended to and did participate in the enterprise and scheme. Specifically, Defendants were aware that the objective of the enterprise was to hide and conceal **MCADAMS'** assets for purposes of depriving **RES-AZ** of its property and to hide and obfuscate the proceeds of the enterprise from attachment and the recovery of its **JUDGMENT**.

204. Each of **MCADAMS DEFENDANTS** acted with the intent to deprive **RES-AZ** of its property and engaged in a scheme or artifice to defraud, as that term is defined in 18 U.S.C. § 1346.

205. The acts alleged are related to each other by virtue of common participants, common victims, common methods of commission, and common purpose and common result of concealing assets and otherwise depriving **RES-AZ** of its property and rights to recover the **JUDGMENT**, as the successor in interest to **Columbian**.

206. As a direct and proximate result of the violation of Title 18 United States Code Sections 1962(a)c, 1962(b), and 1962(c) by defendants, **RES-AZ** has been injured within the United States and has incurred millions of dollars of damages, including, *inter alia*, being deprived of recovery of the **JUDGMENT** against **MCADAMS**, and incurring costs and expenses in attempts to recover such amounts.

207. **RES-AZ** has suffered an injury to its business or property within the United States within the meaning of 18 U.S.C. §1964, by the actions of defendants in violation of 18 U.S.C. §1962(c).

208. **RES-AZ** also is entitled to damages and trebling of its damages, and an award of its attorneys' fees and costs to bring this action pursuant to Title 18 United States Code Section 1964(c).

4828-0674-1812.3

209. **RES-AZ** prays judgment as hereinafter set forth.

## COUNT II
## RICO CONSPIRACY, 18 U.S.C. § 1962(d)

210. **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-209 and referenced exhibits in this Complaint, as if fully set forth herein.

211. As set forth in Count I, the defendants identified therein associated with an enterprise within the meaning of RICO, Title 18 United States Code Section 1961(4), and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity within the meaning of RICO, Title 18 United States Code Section 1961(5), in violation of RICO, Title 18 United States Code Section 1962(c).

212. At all relevant times, each of the defendants identified in Count I was associated with the enterprise and knowingly agreed and conspired to violate Title 18 United States Code Section 1962(c), by either agreeing to the commission of numerous predicate acts of mail/wire fraud or other felonious acts, as described above, or agreeing to the enterprise's overall objective of fraudulently hiding and concealing funds from **RES-AZ**, in violation of 18 U.S.C. §1962(c).

213. **RES-AZ** has been injured within the United States by the actions of the respective defendants as a direct and proximate result of the RICO violations described above by, among other things, the loss of the use and enjoyment of millions of dollars belonging to **RES-AZ** and the costs, expenses and fees that have been incurred to collect such amounts, thus constituting an injury to **RES-AZ's** business or property within the meaning of 18 U.S.C. § 1964.

214. **RES-AZ** is entitled to damages in an amount to be determined at trial. **RES-AZ** also is entitled to treble damages, and its attorneys' fees and costs to bring this action pursuant to Title 18 United States Code Section 1964(c).

215. **RES-AZ** prays judgment as hereinafter set forth.

/ / /

/ / /

## COUNT III
## UNLAWFUL ACTIVITY IN VIOLATION OF A.R.S. § 13-2314

216. **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-215 and referenced exhibits in this Complaint, as if fully set forth herein.

217. **RES-AZ** sustained direct, proximate, and reasonably foreseeable injury to its business and property within the United States by each of the **MCADAMS DEFENDANTS** and **SHAM COMPANIES'** pattern of racketeering activity, as that term is defined in A.R.S. § 13-2314.04.T.3(a), and by violation of A.R.S. § 13-2312.

218. In violation of A.R.S. § 13-2310, the **MCADAMS DEFENDANTS**, and the **SHAM COMPANIES**, pursuant to a scheme or artifice to defraud, knowingly obtained a benefit by means of false or fraudulent representations, promises, or material omissions.

219. **MCADAMS**, with the assistance of **EPLEY** and **MOTAMEDI**, used the proceeds of the unlawful scheme to defraud, to purchase or otherwise to invest in the **SHAM COMPANIES** for the purpose of further advancing the scheme to conceal such assets and make them unavailable for collection through the use of unlawful means.

220. The scheme or artifice to defraud, participated in by each of the **MCADAMS DEFENDANTS** consisted of, among other things, depriving **RES-AZ** of its property by false pretenses, representations, promises and material omissions and the investment and/or transfer of assets in furtherance of such scheme.

221. Pursuant to the artifice and/or scheme set forth herein, the **MCADAMS DEFENDANTS** and the **SHAM COMPANIES** knowingly obtained a benefit by means of the foregoing false or fraudulent representations, promises or material omissions none of which are meant to be inclusive of each and every false or misleading statement contained in the documents or communications referenced.

222. The benefits received by the defendants consist of, *inter alia*, the use and enjoyment of funds rightly belonging to **RES-AZ** and **MCADAMS'** other creditors.

53

223.    In violation of A.R.S. §13-2310, each of the **MCADAMS DEFENDANTS**, pursuant to the scheme or artifice to defraud as set forth above, knowingly falsified, concealed, hid, and otherwise covered up material facts relating to the use and location of funds fraudulently obtained from a financial institution and made or used false writings or documents relating to the use and location of those funds and submitted false representations and documents in connection with their concealment of such funds. Each of the **MCADAMS DEFENDANTS** knowingly engaged in unlawful conduct on an ongoing basis in furtherance of such scheme, as alleged above.

224.    The **MCADAMS DEFENDANTS** and **SHAM COMPANIES** comprise an associated in fact enterprise as that term is defined in A.R.S. § 13-2301. On information and belief, from at least September 2013 to the present, the **MCADAMS DEFENDANTS** and **SHAM COMPANIES** with respect to the enterprise, have and continue to conduct the affairs of the enterprise through acts constituting racketeering.

225.    The racketeering activity consisted of the predicate acts of, among other things, fraudulent schemes and artifices in violation of A.R.S. § 13-2310.

226.    The unlawful acts described above had the same or similar purpose, results, participants and victims.

227.    On information and belief, each of the **MCADAMS DEFENDANTS** engaged in, or conspired with other defendants who engaged in, at least two unlawful acts in furtherance of the scheme.

228.    The frequency and number of unlawful acts demonstrate that the use of such unlawful acts was repeated, ongoing and regular by the **MCADAMS DEFENDANTS** for purposes of advancing their fraudulent scheme, as members of the enterprise. The scheme and use of unlawful acts to advance the scheme is ongoing and there is a threat that the scheme will continue indefinitely.

229.    Each of the defendants was aware or had knowledge of the essential nature and scope of the enterprise and intended to participate in same. Specifically, each of the

4828-0674-1812.3

**MCADAMS DEFENDANTS** and the **SHAM COMPANIES** was aware that the objectives of the enterprise are (and were) to deprive **RES-AZ** of the use and enjoyment of its property.

230. Each defendant agreed with one or more of the other **MCADAMS DEFENDANTS** to facilitate and/or aid and abet the scheme and the unlawful steps taken in furtherance of such scheme.

231. **RES-AZ** has been injured in its business and property within the United States and within Arizona as a direct and proximate result of the violations of A.R.S. §§ 13-2310 and 13-2312 by the **MCADAMS DEFENDANTS** and **SHAM COMPANIES** and, accordingly, it is entitled to actual damages, trebling of such damages, and it attorneys' fees and costs pursuant to A.R.S. § 13-2314.04D.

232. **RES-AZ** prays judgment as hereinafter set forth.

## COUNT IV
## CIVIL CONSPIRACY

233. **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-232 and referenced exhibits in this Complaint, as if fully set forth herein.

234. The **MCADAMS DEFENDANTS** conspired and agreed to engage in the unlawful and fraudulent actions and to make the material misrepresentations and omissions set forth above with the object of fraudulently hiding and concealing assets that would otherwise have been available to **RES-AZ**.

235. The **MCADAMS DEFENDANTS** acted in furtherance of their common plan and there was a meeting of the minds between defendants on the object or course of action against **RES-AZ**.

236. The **MCADAMS DEFENDANTS** have committed multiple unlawful, overt acts in furtherance of their conspiracy as set forth above.

237. **RES-AZ** has been injured as a direct and proximate result of the **MCADAMS DEFENDANTS'** conduct described above by, among other things, the loss of the use and

55

enjoyment of millions of dollars belonging to **RES-AZ** and the costs, fees and expenses incurred to collect such amounts.

238.    **RES-AZ** prays judgment as hereinafter set forth.

## COUNT V
## COMMON LAW FRAUD

239.    **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-238 and referenced exhibits in this Complaint, as if fully set forth herein.

240.    This count is brought against the **MCADAMS DEFENDANTS**, other than **ELIZABETH**, and all references in this Count V to the **MCADAMS DEFENDANTS** excludes **ELIZABETH**.

241.    As described more fully above, each of the subject **MCADAMS DEFENDANTS** made numerous, false representations to **RES-AZ** and/or its predecessor in interest, regarding the financial condition of **MCADAMS** and the assets owned and controlled by **MCADAMS**.

242.    Upon information and belief, the representations by each of the subject **MCADAMS DEFENDANTS** were made by each such individual with knowledge that the representations were false at the time they were made and with the specific intent of deceiving **RES-AZ** and/or its predecessor-in-interest.

243.    Upon information and belief, the representations made by the subject **MCADAMS DEFENDANTS** were incomplete and materially false and misleading when such individuals had an obligation to disclose complete and accurate information.

244.    For purposes of example, not limitation, the representations of the subject **MCADAMS DEFENDANTS**, made in many instances under oath and under penalty of perjury, falsely indicated that **MCADAMS** did not own, or control, significant financial assets including, but not limited to, luxury cars, planes, yachts and businesses generating substantial income including, but not limited to, **VC DYNAMICS, INC.**, among others.

56

245. Upon information and belief, the subject **MCADAMS DEFENDANTS** knew the representations set forth above were false when they were made to **RES-AZ**, its predecessor in interest, the **CHAPTER 7 TRUSTEE**, the Bankruptcy Court, the Maricopa County Superior Court and the Arizona Corporation Commission.

246. Upon information and belief, the subject **MCADAMS DEFENDANTS** made the representations with the intent to deceive **RES-AZ**, its predecessor in interest, the **CHAPTER 7 TRUSTEE**, the Bankruptcy Court, the Maricopa County Superior Court and the Arizona Corporation Commission and with the knowledge that each of them would rely on the representations.

247. Upon information and belief, the subject **MCADAMS DEFENDANTS** made the misrepresentations with the intent to prejudice **RES-AZ**, among others, and make it believe that **MCADAMS** was destitute or otherwise lacked the financial means to satisfy the **JUDGMENT**, when, in fact, he has the financial resources to satisfy the **JUDGMENT** and such financial resources are, instead, being enjoyed by the **MCADAMS DEFENDANTS**.

248. The misrepresentations made by the subject **MCADAMS DEFENDANTS** were material.

249. For purposes of example, not limitation, **MCADAMS** as a Debtor seeking protection under Chapter 7 of the Bankruptcy Code had a legal obligation to provide **RES-AZ** information regarding the true financial condition of **MCADAMS**.

250. Upon information and belief **MCADAMS**, intentionally withheld material information from **RES-AZ** from which it could have established his true financial condition.

251. For purposes of example, not limitation, **EPLEY** as a deponent under Rule 2004 of the Bankruptcy Rules of Procedure had a legal obligation to provide **RES-AZ** information regarding the true financial condition of **MCADAMS**.

252. Upon information and belief **EPLEY** intentionally withheld material information from **RES-AZ** from which it could have established the true financial condition of **MCADAMS**.

57

253. For purposes of example, not limitation, **PARKER** as a deponent under Rule 2004 of the Bankruptcy Rules of Procedure had a legal obligation to provide **RES-AZ** information regarding the true financial condition of **MCADAMS**.

254. Upon information and belief, **PARKER** intentionally withheld material information from **RES-AZ** from which it could have established the true financial condition of **MCADAMS**.

255. For purposes of example, not limitation, **MOTAMEDI** had a legal duty to ensure that the information provided to the Arizona Corporation Commission was true and accurate.

256. Upon information and belief **MOTAMEDI** intentionally withheld material information from the Arizona Corporation Commission from which **RES-AZ** could have established the true financial condition of **MCADAMS**.

257. For purposes of example, not limitation, **JONES** had a legal duty to ensure that the information provided to the Arizona Corporation Commission was true and accurate.

258. Upon information and belief, **JONES** intentionally withheld material information from the Arizona Corporation Commission from which **RES-AZ** could have established the true financial condition of **MCADAMS**.

259. As set forth above, **MCADAMS**, **EPLEY**, **PARKER**, **MOTAMEDI**, and **JONES** had a duty to fully disclose all material facts related to the true financial condition of **MCADAMS**.

260. Upon information and belief, **MCADAMS**, **EPLEY**, **PARKER**, **MOTAMEDI**, and **JONES** engaged in fraudulent concealment of material facts through deceptive acts, contrivances and perjury intended to hide information from **RES-AZ**, mislead **RES-AZ**, avoid suspicion, and prevent further inquiry by **RES-AZ** regarding the true financial condition of **MCADAMS**.

261. Upon information and belief, **MCADAMS**, **EPLEY**, **PARKER**, **MOTAMEDI**, and **JONES** breached their duty to disclose all material facts related to the

58

financial condition of **MCADAMS** when the various financial representations were provided by **MCADAMS**, **EPLEY**, **PARKER**, **MOTAMEDI**, and **JONES**.

262. At the time the **MCADAMS DEFENDANTS** made the misrepresentations, **RES-AZ** did not know that the representations were false and had no reason to doubt the veracity of such statements, given that many of them were made under oath and penalty of perjury.

263. **RES-AZ** justifiably and reasonably relied on the misrepresentations made by **MCADAMS DEFENDANTS**.

264. As a result of **RES-AZ's** reliance on the representations of the **MCADAMS DEFENDANTS**, **RES-AZ** has been damaged in an amount to be determined at trial, but in any event not less than the outstanding balance under the **JUDGMENT**, interest accruing on such amount, and **RES-AZ's** costs and fees to collect upon such judgment.

265. **RES-AZ** prays judgment as hereinafter set forth.

## COUNT VI
## AIDING AND ABETTING AND CONSPIRACY TO COMMIT FRAUD

266. **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-265 and referenced exhibits in this Complaint, as if fully set forth herein.

267. This count is brought against the **MCADAMS DEFENDANTS**.

268. On numerous occasions, including the instances alleged in this Complaint, the **MCADAMS DEFENDANTS** made misrepresentations to **RES-AZ** and/or its predecessor in interest regarding the assets of **MCADAMS**, or otherwise undertook activities to assist **MCADAMS** in hiding his assets with express and actual knowledge of the misrepresentations made by the **MCADAMS DEFENDANTS**.

269. Upon information and belief, the misrepresentations made to **RES-AZ**, and/or its predecessor in interest were made with the express and actual knowledge of the **MCADAMS DEFENDANTS** that the representations were false and for the purpose of deceiving **RES-AZ** and/or its predecessor in interest.

59

270. Upon information and belief, the representations made by the **MCADAMS DEFENDANTS** were incomplete and materially false and materially misleading when such **MCADAMS DEFENDANTS** had an affirmative obligation to disclose true and complete information.

271. Upon information and belief, the **MCADAMS DEFENDANTS** knew that the representations were false when they were made to **RES-AZ** and/or its predecessor-in-interest. Upon information and belief, the **MCADAMS DEFENDANTS** made the misrepresentations, or failed to disclose information they were obligated to disclose, with the intent to deceive **RES-AZ** and/or its predecessor in interest, with the knowledge that **RES-AZ** would rely on the representations in its efforts to collect on the **JUDGMENT**.

272. Upon information and belief, and as alleged in greater detail above, each of the subject **MCADAMS DEFENDANTS** knowingly and intentionally made misrepresentations for purpose of furthering the fraudulent scheme to hide and conceal **MCADAMS'** assets from collection by **RES-AZ**.

273. The **MCADAMS DEFENDANTS** conspired and agreed to commit fraud and each of them undertook steps in furtherance of such scheme.

274. For purposes of example, not limitation, **MCADAMS** as a Debtor seeking protection under Chapter 7 of the Bankruptcy Code had a legal obligation to provide **RES-AZ** information regarding his true financial condition.

275. Upon information and belief, **MCADAMS** intentionally withheld material information from **RES-AZ** from which it could have established his true financial condition.

276. For purposes of example, not limitation, **EPLEY** as a deponent under Rule 2004 of the Bankruptcy Rules of Procedure had a legal obligation to provide **RES-AZ** information regarding the true financial condition of **MCADAMS**.

277. Upon information and belief, **EPLEY** intentionally withheld material information from **RES-AZ** from which it could have established the true financial condition of **MCADAMS**.

4828-0674-1812.3

278. For purposes of example, **PARKER**, as a deponent under Rule 2004 of the Bankruptcy Rules of Procedure, had a legal obligation to provide **RES-AZ** information regarding the true financial condition of **MCADAMS**.

279. Upon information and belief, **PARKER** intentionally withheld material information from **RES-AZ** from which it could have established the true financial condition of **MCADAMS**.

280. For purposes of example, **MOTAMEDI** had a legal duty to ensure that the information provided to the Arizona Corporation Commission was true and accurate.

281. Upon information and belief, **MOTAMEDI** intentionally withheld material information from the Arizona Corporation Commission from which **RES-AZ** could have established the true financial condition of **MCADAMS**.

282. For purposes of example, **JONES** had a legal duty to ensure that the information provided to the Arizona Corporation Commission was true and accurate.

283. Upon information and belief, **JONES** intentionally withheld material information from the Arizona Corporation Commission from which **RES-AZ** could have established the true financial condition of **MCADAMS**.

284. Upon information and belief, the **MCADAMS DEFENDANTS** made the misrepresentations with the intent to prejudice **RES-AZ** and make it believe that **MCADAMS** was destitute when, in fact, **MCADAMS** was, and is, quite wealthy, which wealth the **MCADAMS DEFENDANTS** enjoy by virtue of their relationships, both professional and personal, with **MCADAMS**.

285. Upon information and belief, the representations made by the **MCADAMS DEFENDANTS** were material.

286. At the time the representations were made, **RES-AZ** did not know or have reason to know that the representations made by the **MCADAMS DEFENDANTS** were false.

4828-0674-1812.3

287. **RES-AZ** justifiably and reasonably relied on the misrepresentations made by the **MCADAMS DEFENDANTS** (and failures to disclose information when there was an obligation to do so)**,** many of which were made under oath and penalty of perjury.

288. The **MCADAMS DEFENDANTS** had obligations to provide **RES-AZ**, and/or its predecessor in interest, true and complete information regarding **MCADAMS'** financial position**.**

289. Upon information and belief, the **MCADAMS DEFENDANTS** intentionally withheld material information from **RES-AZ** and/or its predecessor in interest from which **RES-AZ** could have established the true financial condition of **MCADAMS**.

290. Upon information and belief, the **MCADAMS DEFENDANTS** engaged in fraudulent concealment of material facts through deceptive acts, contrivances and perjury intended to hide information from **RES-AZ**, mislead **RES-AZ**, avoid suspicion, and prevent further inquiry by **RES-AZ** regarding the true financial condition of **MCADAMS**.

291. As set forth above, the **MCADAMS DEFENDANTS** had a duty to fully disclose all material facts related to the true financial condition of **MCADAMS**.

292. Upon information and belief, the **MCADAMS DEFENDANTS** breached their duty to disclose all material facts related to the financial condition of **MCADAMS** when the various financial representations outlined herein were provided.

293. Upon information and belief, the **MCADAMS DEFENDANTS** acted: (i) improperly; (ii) with an improper purpose and pursuant to a unified plan and scheme to defraud; and (iii) to further their own interests at the expense of **RES-AZ** by, among other things, engaging in the conduct alleged in this Complaint.

294. Upon information and belief, the **MCADAMS DEFENDANTS** should have known that they were committing fraud on **RES-AZ** by providing the false representations regarding the financial condition of **MCADAMS**.

295. Upon information and belief, the **MCADAMS DEFENDANTS**, through their misrepresentations, actions and other material assistance to **MCADAMS**, and others, substantially assisted in the commission of fraud upon **RES-AZ**, its predecessor in interest,

4828-0674-1812.3

the **CHAPTER 7 TRUSTEE**, the Bankruptcy Court, the Maricopa County Superior Court and the Arizona Corporation Commission.

296. Upon information and belief, the **MCADAMS DEFENDANTS** encouraged and affirmatively advised **MCADAMS** and others and colluded in committing fraud on **RES-AZ**.

297. As a result of **RES-AZ's** reasonable reliance on the misrepresentations (and failure to disclose information when there was a duty to do so) made by the **MCADAMS DEFENDANTS**, **RES-AZ** has been damaged in an amount to be determined at trial but in any event not less than the outstanding balance of the **JUDGMENT** and its costs and fees to collect upon the **JUDGMENT**.

298. **RES-AZ** prays judgment as hereinafter set forth.

## COUNT VII
## VIOLATIONS OF THE UNIFORM FRAUDULENT TRANSFER ACT

299. **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-298 and referenced exhibits in this Complaint, as if fully set forth herein.

300. **MCADAMS** was indebted and otherwise obligated to **RES-AZ** pursuant to the **JUDGMENT**.

301. Upon information and belief, **MCADAMS** by and through himself and others acting on his behalf transferred all, or substantially all, of his assets to third parties including one, or more, of the **MCADAMS DEFENDANTS** and the **SHAM COMPANIES**, among others.

302. Upon information and belief, **MCADAMS** did not receive adequate consideration or reasonably equivalent value for the transfers alleged herein.

303. Upon information and belief, the transfers alleged herein were made in an effort to conceal **MCADAMS'** assets and otherwise hinder, or delay the efforts of **RES-AZ** to enforce its **JUDGMENT** and otherwise defraud **RES-AZ**.

304.    **MCADAMS** alleged he was insolvent at the times he made the transfers as evidenced by his application for Bankruptcy Protection in the **BANKRUPTCY**.

305.    Upon information and belief, the transferees did not take the transfers in good faith and did not provide a reasonably equivalent value.

306.    Upon information and belief, each of the recipients of **MCADAMS'** assets knew that reasonable value for the assets was not provided and knowingly received and participated in the scheme for purposes of advancing the unlawful scheme to hide and conceal **MCADAMS'** assets from collection.

307.    **RES-AZ** was harmed by the transfers alleged herein given that the assets of **MCADAMS** were transferred beyond the reach of **RES-AZ** to **RES-AZ's** financial detriment.

308.    The transfers alleged herein constitute fraudulent transfers under Arizona's Uniform Fraudulent Transfer Act, A.R.S. § 44-1001, *et seq.*

309.    **RES-AZ** is entitled to relief under A.R.S. § 44-1007, including, but not limited to, the Court unwinding and/or voiding the fraudulent transfers as well as awarding **RES-AZ** damages as available under the statute.

310.    **RES-AZ** is entitled to relief under A.R.S. § 44-1007(A)(4)(a), including preliminary and permanent injunctive relief, prohibiting further disposition by defendants of the subject assets.

311.    Given the severity and frequency of the subject conduct, and the near certainty that defendants will continue to attempt to transfer funds through, *inter alia*, the use of offshore bank accounts and sham corporations, **RES-AZ** prays pursuant to A.R.S. § 44-1007(A)(4)(b), for the appointment of a receiver to take charge of the assets that have been transferred and to marshal and take control of the subject accounts and corporations where it is believed defendants have transferred and hidden **MCADAMS'** assets and wealth, for purposes of preserving such assets for satisfaction of the **JUDGMENT** and the additional damages at issue in this action.

312.    **RES-AZ** prays judgment as hereinafter set forth.

4828-0674-1812.3

## COUNT VIII
## CONSPIRACY TO COMMIT FRAUDULENT TRANSFER

313.    **RES-AZ** repeats and realleges each of the allegations contained in paragraphs 1-312 and referenced exhibits in this Complaint, as if fully set forth herein this Count VIII for Conspiracy to Commit Fraudulent Transfer as set forth in Arizona common law in that certain opinion of *McElhanon v. Hing*, 151 Ariz. 403, 728 P.2d 273 (1986) and its progeny.

314.    Upon information and belief, **MCADAMS** had substantial assets at the time **RES-AZ** obtained the **JUDGMENT**.

315.    Upon information and belief, **MCADAMS** fraudulently conveyed all, or substantially all, of his assets in the names of his close family, friends, business partners and/or associated entities, including, but not limited to, the defendants.

316.    **MCADAMS** made the conveyances alleged herein with the intent to hinder, delay, and/or defraud his creditors from collecting on the **JUDGMENT,** including, but not limited to, **RES-AZ**.

317.    Upon information and belief, the recipients of the fraudulent transfers alleged herein including, but not limited to defendants, made further fraudulent transfers as alleged in greater detail above.

318.    **MCADAMS** entered into one or more agreements with one or more of the defendants to commit fraudulent conveyances.

319.    Upon information and belief, the **MCADAMS DEFENDANTS** entered into agreements with one another to commit fraudulent transfers.

320.    The **MCADAMS DEFENDANTS** conspired to commit the fraudulent conveyances complained of herein.

321.    Because each of the **MCADAMS DEFENDANTS** conspired to commit the fraudulent transfers alleged herein, they are liable for same.

322.    **RES-AZ** incurred damages resulting from the fraudulent conveyances that are traceable to the conspiracy of the **MCADAMS DEFENDANTS**.

65

323.     **RES-AZ's** equitable remedies available under Arizona's Uniform Fraudulent Transfer Act set forth at A.R.S. § 44-1001, *et seq.* are inadequate to address the harm suffered by **RES-AZ**.

## NOTICE TO ATTORNEYS GENERAL

Upon filing, **RES-AZ** will provide a copy of this Verified Complaint, via First Class U.S. Mail, to: (1) the United States Attorney's Office for the District of Arizona; (ii) the Attorney General for the State of Arizona; and (iii) the Maricopa County Attorney's Office.

## JURY DEMAND

**RES-AZ** demands a jury trial for its claims herein.

## PRAYER

WHEREFORE, **RES-AZ** respectfully requests that the Court enter the following judgment for **RES-AZ** and against the defendants named herein:

A.     Judgment for **RES-AZ** against defendants for all counts asserted herein;

B.     Temporary, preliminary and permanent injunctive relief enjoining the defendants and each of their officers, agents, servants, employees, and attorneys – and all other persons who are in active concert or participation with these persons or entities – from transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien, security interest, or other interest in, or otherwise disposing of, any assets, businesses, or funds, wherever located, that are: (a) owned, controlled, held by, in whole or in part, for the benefit of, or subject to access by, or belonging to defendants; (b) in the actual or constructive possession of defendants, or (c) in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other entity directly or indirectly owned, managed or controlled by, or under common control with, any defendant, unless and until the **JUDGMENT** has been satisfied and the additional damages, fees, and costs awarded for this action have been satisfied;

C.     Temporary, preliminary and permanent equitable relief enjoining defendants from undertaking any further conduct in furtherance of the unlawful scheme;

4828-0674-1812.3

D. The appointment of a receiver to take charge of the assets that have been transferred and to marshal and take control of the subject assets, accounts and corporations where it is believed defendants have transferred and hidden **MCADAMS'** assets and wealth;

E. Leave from the Federal Rules of Civil Procedure to propound immediate discovery;

F. An award of actual and compensatory damages as available under the law, including without limitation, damages under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1964, under A.R.S. § 13-2314 and pursuant to fraud and related claims;

G. Trebling of damages and reasonable attorneys' fees incurred in prosecuting this action, pursuant to Title 18 U.S.C. § 1964(c);

H. Trebling of damages and reasonable attorneys' fees as available pursuant to A.R.S. § 13-2314.04.D;

I. Punitive damages;

J. Prejudgment interest and post-judgment interest on the outstanding **JUDGMENT** and post-judgment interest on damages awarded by this Court; and

K. Such other, and further legal or equitable relief that the Court may deem just and proper.

4828-0674-1812.3

DATED this 18th day of July, 2016.

KUTAK ROCK LLP


By /s/ Michael W. Sillyman
    Michael W. Sillyman
    Jake L. Sherrard
    Suite 300
    8601 North Scottsdale Road
    Scottsdale, AZ  85253-2738

    Samuel L. Blatnick
    2300 Main Street, Suite 800
    Kansas City, MO 64108
    (Pro hac vice pending)

    *Attorneys for Plaintiff*

4828-0674-1812.3

## VERIFICATION

I, on behalf of RES-AZ One, certify under penalty of perjury and pursuant to the laws of the State of Arizona that the preceding is true and correct to the best of my knowledge and belief.

Date: 7/18/2016

Michael Strickland
Vice President
Rialto Capital Advisors, LLC

4828-0674-1812.3